Mink vs. The State.

---

## MINK vs. THE STATE.

*April 17 — May 15, 1884.*

*Legitimacy of child: Wife cannot testify to non-access of husband.*

On the question of the legitimacy of her children, the wife cannot give evidence, even as to collateral facts, tending to show non-access of her husband during the time in which they must have been begotten.

ERROR to the Circuit Court for *Racine* County. The facts appear from the opinion.

For the plaintiff in error there was a brief by *S. & A. S. Ritchie*, and oral argument by *Mr. A. S. Ritchie*.

*H. W. Chynoweth*, Assistant Attorney General, for the defendant in error.

ORTON, J. This is a case of bastardy. The prosecutrix was a married woman, and the wife of one John Birket. The child was begotten in January, 1881, and born the following November, in the city of Racine. The marriage between her and John Birket took place in Galena, Illinois. It inferentially appears from the evidence that they lived together in the state of Iowa in 1879, and that she left him in that state and came from there to the city of Racine in 1880. On the trial the prosecutrix was asked by the prosecutor, "Who did you come from Iowa with?" and she answered, "I came alone." "Where was your husband when you came alone from Iowa?" and she answered, "I don't know where he was." "Have you ever had connection with any other man?" and she answered, "No, sir; I never did." These questions were. all objected to at the time and the objection overruled, and the counsel of the defendant moved to strike them and the answers to them out of the evidence, and the motion was denied. Counsel of the defendant asked the court to instruct the jury as follows: "The wife is not a competent witness to prove that the husband did not have access to her, and you will therefore disregard all evidence given by the prosecutrix herself which tends to show that the husband could not have been the father of the child;" which instruction the court refused to give. After verdict the counsel of the defendant moved for a new trial, and urged these same objections again.

The law is well settled that the wife, on the question of the legitimacy of her children, is incompetent to give evidence of the non-access of her husband during the time in which

they must have been begotten. This rule is founded on the very highest grounds of public policy, decency, and morality. The presumption of the law is in such a case that the husband had access to the wife, and this presumption must be overcome by the clearest evidence that it was impossible for him, by reason of impotency or imbecility, or entire absence from the place where the wife was during such time, to have had access to the wife, or to be the father of the child. Testimony of the wife even *tending* to show such fact, or of any fact from which such non-access could be *inferred*, or of any collateral fact connected with this main fact, is to be most scrupulously kept out of the case; and such non-access and illegitimacy must be clearly proved by other testimony. *King v. Inhabitants, etc.*, 5 Adol. & El., 180; *Dennison v. Page*, 29 Pa. St., 420; *People v. Overseers*, 15 Barb., 286; *Comm. v. Shepherd*, 6 Bin., 283; *State v. Pettaway*, 3 Hawks (N. C.), 625; *Cope v. Cope*, 1 Moody & R., 269. The law is so well settled, and not being disputed by the attorney general on the argument, no further citation of authority is necessary.

The only question is, Do these questions or answers conflict with this principle? Asking the prosecutrix "who came with her from Iowa," where she had lived with her husband, included her husband, and implied the inquiry whether he came with her; and the answer, "I came alone," established the fact that he did not come with her. The question, "Where was your husband at any particular time," whether during the time within which the child was begotten or not, was held in *King v. Inhabitants, etc., supra,* to be a *collateral* fact directly connected with the main fact, and objectionable. The second of the above questions comes directly within this decision. "Where was your husband when you came alone from Iowa?" and her answer, "I don't know where he was," implied that they were estranged from each other, or that they had permanently separated; or, at

least, that they were not together or near each other.   By
the rule of evidence in ordinary cases such a condition of
their relations as husband and wife would be presumed to
have continued to that time, the contrary not being proved.
The last of the above questions, and the answer, were posi-
tive and direct proof that the husband had had no access to
her during the time in which the child must have been be-
gotten.   "Have you ever had connection with *any other*
man?"   "No, sir; I never did."   This question was under-
stood to refer to the time within which some other man
might have begotten the child, and "any other man" em-
braced *all* men, including the husband, except the defend-
ant.   All these questions were very strongly objectionable,
and the answers more so; and especially so in a case where,
to say the least, the testimony of the other witnesses as to
such non-access was very weak and inconclusive.   These
witnesses did not know that the prosecutrix was married·
until the examination of this case before the magistrate;
never knew or saw the husband at any time; and knew
nothing of his personal appearance; and yet they testified
that they had never seen him in Racine.   This is the weak-
est kind of negative testimony, and it is quite apparent that
the jury must have relied on the testimony of the prosecu-
trix herself almost solely for proof — conclusive proof — of
the non-access.   These were errors.

*By the Court.*— The judgment of the circuit court is re-
versed, and the cause remanded for a new trial.