ALBERT ERWIN and wife Caroline v. L. A. BAILEY and wife Elsie, et als.

(Decided December 23, 1898.)

*Depositions—Legitimacy—Marriage of Slaves.*

1. Where the notice to take depositions is wrongly entitled, the objection is waived by attendance, and cross-examination of the witnesses.

2. Upon the question of the legitimacy of a child, evidence of the husband's non-access at the time the child was begotten and of his frequent quarrels with his wife in reference to the child's illegitimacy is admissible. General reputation of illegitimacy is in-admissible.

3. Former slaves continuing their relations of man and wife until the death of one of the parties—were made man and wife under our Statute of 1866, whether they ever went before the Clerk and had a record made of this relation or not children born during such cohabitation are presumed to be legitimate and entitled to the benefit of the laws of inheritance. The presumption may be rebutted.

CIVIL ACTION for ⅛ interest in land, tried before *Hoke*, *J.*, at March Term, 1898, of the Superior Court of BUNCOMBE County.

STATEMENT OF THE CASE.

The land sued for was admitted to have belonged to Cæsar Swinton, colored, who died before suit was brought. Caroline Erwin, the *feme* plaintiff claimed

one third of the land as heir at law of Cæsar Swinton, and defendants Hester Bailey and one other, two children and heirs at law of Cæsar Swinton, answered, claiming the entire interest in the land—alleging that Caroline was not the child of Swinton. Plaintiff offered depositions of Susan Cochran and Henry Vanderhost —these depositions had been opened by consent under an agreement that any objection thereto might be made and passed upon at the trial. Defendant objected to reading such depositions on the ground that the notices were entitled "Alfred Erwin and wife v. Ella Bailey et al," whereas the true title of the cause was, Erwin and wife against L. A. Bailey and Hester Bailey et al. It appeared that defendant had been duly served with a notice entitled, Alfred Erwin and wife v. Ella Bailey et al, giving correct time and place where the depositions were taken, and defendant had filed cross interrogatories at the taking of the same, which were answered, and that no objection to taking them had been made at the time they were taken. The court overruled the objection and allowed the plaintiff to amend the notice, so as to properly entitle the notice, and allowed the depositions to be read. Defendant excepted. These depositions with other evidence of plaintiff tended to show that Swinton and Catherine Swinton, mother of plaintiff and of defendants, were slaves belonging to Frank Johnston; that during the war and before, Cæsar and Catherine lived together as man and wife after the manner of slaves, and while they so lived together Catherine gave birth to Hester Bailey and Caroline Erwin, and another child who is also a defendant; that Hester and Caroline were born during slavery; and it did not appear when the last child was born, but at some period while Cæsar and Catherine lived together as

man and wife; that they were thus living together at
the surrender and thereafter moved to North Carolina
where they continued to so live till the death of Cather-
ine in 1868 or later; that they never went before the
Clerk or Justice and made acknowledgment of their
marriage as required by the Act of 1866, Ch. 40, Sec. 5;
that Cæsar Swinton bought the land now sued for; that
he and Catherine are both dead, and the parties now
claim the land as his children and heirs at law.

To prove that plaintiff Caroline was not the child of
Cæsar, the defendant introduced Mrs. Lelia Coffin, who
testified that Cæsar and Catherine were slaves belong-
ing to her father, Frank Johnston, and that Catherine
was her mother's maid who came with the family every
summer to Flat Rock, N. C., and that Cæsar remained
on the rice plantation in South Carolina; that the family
came to North Carolina about the first of May and went
back to South Carolina about the latter part of Novem-
ber, and Caroline was born about a month after the
family had come to Flat Rock, sometime during the
war. The witness was further questioned about that
date, and stated that the family were in the habit of
coming up the first of May and went back the last of
November, and that Caroline was born within a month
after the family moved up to Flat Rock for the summer.

The defendants offered to show by this witness that
it was the general reputation in her father's family that
Caroline was not the child of Cæsar Swinton, but of her
father's coachman. Plaintiff's objected, objection sus-
tained and defendant excepted. Defendant offered to
show by this witness and others that both Cæsar and
Catherine were heard to say, while they lived together
as aforesaid, that Caroline was not the child of Cæsar.
Plaintiff objected, objection sustained and defendant

ERWIN *v.* BAILEY.

excepted.    Defendant further offered to show that it
was the general reputation in Cæsar's family that
Caroline was not the child of Cæsar.    Plaintiff objected.
Objection sustained and defendant excepted.    Defend-
ant further offered to prove that while Cæsar and Cath-
erine were thus living together they had constant quar-
rels about Caroline not being Cæsar's child.    Plaintiff
objected; objection sustained and defendant excepted.
Defendant offered evidence to show that Cæsar became
dissatisfied with his wife's being in the mountains and
asked his owner, Frank Johnston, to let him take anoth-
er wife, and he gave his permission, and Cæsar did take
another woman and lived with her as his wife, till Cath-
erine went back, and Catherine took on so about it that
Cæsar gave up the new wife and renewed his relations
with Catherine, which continued till the surrender and
afterwards, as above set forth.    This interruption of
Cæsar's relation with Catherine was not during any pe-
riod when Caroline was begotten or born; nor were any
declarations of Cæsar or· Catherine, tending to make
Caroline illegitimate shown to have been made while
their relations were so interrupted.    Defendant further
offered Dr. Glenn as a witness who testified that the or-
dinary and natural period of pregnancy was nine months;
that children were born at 7 months not infrequently,
and lived and became vigorous, though a child born at
that period was ordinarily not fully developed at first—
the finger-nails were not perfect or some other imper-
fection; that a child could be born and live at six months,
but could not do so without the aid of an incubator,
and witness did not think it possible for a child born at
six months, to live without such incubator.    He did not
state between six and seven months, except as shown in
the above evidence.

The foregoing was the evidence in the case. The court was of opinion and so instructed the jury that if Caroline was born during the period when Cæsar and Catherine, the mother, were living together as man and wife and were so living together at the surrender and moved to North Carolina and lived as man and wife after the surrender till the death of Catherine, the statute declared them man and wife from the beginning of their relations as such, and that in that view there was no competent or sufficient evidence offered to show that Caroline was not Cæsar's child, and if the jury believed the evidence, the issue should be answered for the plaintiff as to one third of the land, as shown in the verdict. Defendant excepted, and moved for a new trial for error in the rulings of the court; first on the depositions, and second on questions of evidence, and third on the charge as given. The motion was overruled. Judgment for plaintiff for one third of the land. Defendant appealed.

*Mr. Geo. A. Shuford,* for appellant.
*Messrs. A. S. Barnard* and *Moore & Moore, contra.*

FURCHES, J.: The land in controversy is admitted to have belonged to Cæsar Swinton at the time of his death and that it descended to his heirs at law. The defendant Bailey is admitted to be an heir of Cæsar. It is also admitted that the other defendants, children of Regina, another daughter of Cæsar, who married Jerry Richardson, are heirs of Cæsar. But they deny that the plaintiff Caroline Erwin is a child and heir of Cæsar.

It appeared from the evidence that Cæsar and Catherine were slaves, the property of Frank Johnston,

before their emancipation in 1865 ; that said Johnston
was a citizen of South Carolina and an owner of a sum-
mer residence at Flat Rock, Henderson County, N. C.;
that Cæsar and Catherine lived together as man and
wife after the manner of slaves, and that the plaintiff
Caroline Erwin was born during the slavery of Cæsar
and Catherine and while they lived together as man and
wife; that Cæsar and Catherine moved to North Caro-
lina after they obtained their freedom, and continued to
live together as man and wife, until the death of Cæsar
about 1868, and that Catherine has also died, since the
death of Cæsar.

The plaintiff during the trial offered two depositions
in evidence for the purpose of sustaining her conten-
tion. The depositions were objected to by defendants
upon the ground that the notices, upon which the depo-
sitions were taken, did not state the title of the case
correctly. But it appeared that defendants were pres-
ent at the taking of the depositions, and cross exam-
ined the witnesses. The court overruled these excep-
tions and defendants excepted.

The exceptions cannot be sustained. If there was
such error as is alleged by defendants, it was waived by
their cross examination. They suffered no injury by
this error, if it existed, and cannot be heard now to
complain.

The defendants contended that Cæsar was not the
father of the plaintiff Caroline Erwin, and to sustain
this contention, offered evidence tending to show that
Catherine, her mother, was the maid of Mrs. Johnston
and came with her to Flat Rock about the first of May,
and remained until about the last of November, while
Cæsar was left on the rice plantation in South Carolina;
and that from the time of the birth of Caroline she

must have been begotten during the time Catherine was at Flat Rock, and that she was born about a month after she came to Flat Rock.

It was also in evidence on the part of defendants that Cæsar complained that Catherine stayed too much of her time in the mountains of North Carolina and asked his master to allow him to take another wife; that the master granted this permission and he took another wife, but when Catherine came back to South Carolina, Cæsar left his new wife and continued to live with Catherine as he had formerly done; and they continued to live together as man and wife until Cæsar's death. But it appeared that plaintiff was not begotten during the time Cæsar was living with the other woman as his wife. This evidence was objected to and excluded, and defendants excepted.

The defendants proposed to prove that there was a general reputation that plaintiff was not the child of Cæsar. This evidence was objected to and ruled out, and defendants excepted.

We do not think there was any error in the Court's sustaining plaintiff's objections, and in overruling the exceptions of defendants to this evidence. The case of *Woodward* v. *Blue*, 107 N. C., 407, comes nearer sustaining defendant's exceptions than any case called to our attention. And that case does not do so, as we think.

The defendants then offered to prove that Cæsar and Catherine had frequent quarrels about Caroline, in which Cæsar alleged that she was not his child. This evidence was objected to and excluded, and defendants excepted. It seems to us that this exception is sustained by *Woodward* v. *Blue*, *supra*, and this evidence should have been admitted.

ERWIN *v.* BAILEY.

Cæsar and Catherine having lived together as man and wife while they were slaves, and having continued to live together in this relation until the death of Cæsar, about 1868 this made them man and wife under our statute of 1866, whether they ever went before the Clerk and had a record made of this relation, or not. *State* v. *Whitford*, 86 N. C., 636. And children born during such cohabitation are presumed to be legitimate, and entitled to the benefit of the law of inheritance. But this presumption of legitimacy may be rebutted, in the case of children of former slaves who sustained the relation of man and wife, just as it may be as to children born during the existence of other legal marriages. *Woodward* v. *Blue, supra*, and authorities there cited.

This being so, we are of the opinion that the evidence tending to show the non-access of Cæsar, at the time Caroline must have been begotten, and the evidence of the quarrels that Cæsar and Catherine had about the illegitimacy of Caroline, (improperly excluded) makes a case that should have gone to the jury. It was not a case where the Court could instruct the jury "that if they believed the evidence they should find for the plaintiff."

For the error in ruling out the testimony, as pointed out above, and the error committed in charging the jury that if they believed the evidence they should find for the plaintiff, there must be a new trial.

New trial.