MEBANE v. CAPEHART.

(October 16, 1900.)

*Bastards—Evidence—Admissibility—Parent and Child.*

Upon the issue of paternity under act 1866, it is competent to show—
(a) That the alleged father did not have access for more than twelve months before birth of child.
(b) That the alleged father and mother separated on account of a dispute as to the paternity of the child.
(c) Admissions of mother as to paternity of child.
(d) That the mother was intimately associated with a man other than the alleged father sometime before and after the begetting of the child.

SPECIAL PROCEEDING for Partition of Land by Isaiah Mebane and others against Henrietta Capehart and others, heard by Judge *O. H. Allen* and a jury, at Spring Term, 1900, of BERTIE Superior Court. From judgment for defendant, plaintiff appealed.

The contention of the plaintiffs (petitioners) was that they were the owners in fee and tenants in common of the land as the children of a slave, Moses Hoggard, and Zlyphia Hoggard, also a slave; that they were born of a slave cohabi-

tation, which was followed by a marriage after the war; and that the *feme* defendant was not born of such cohabitation, but was the child of Zylphia by another person. The land was the property of Moses, and Zylphia owned no interest in it. The answer shows the contention of defendants, to-wit: "The defendants, reserving the right to have this ac-. tion dismissed for want of a prosecution bond, say, in answer to the petition [after admitting allegations in complaint,] that section 8 of complaint [alleging that it is impossible to divide the land with justice to the tenants, and that a sale thereof is necessary] is untrue, and that said land, nine or more years ago, was surveyed at the instance of plaintiffs and defendants, and the shares of both plaintiffs and defendants allotted to them, and they have been in the possession of their respective shares since that time; the plaintiff Mebane having cut and sold the timber from his share, which was woodland, and the other plaintiffs cultivating and improving their shares, and the defendants clearing up, fencing, ditching, and building a dwelling, etc., on the part allotted by parol to the defendant Henrietta, and living upon and cultivating the same. And the defendants aver that it is to the interest of the tenants in common owning the said lands that the same be actually partitioned, and by way of equitable and affirmative relief ask that the same be actually partitioned, and that, as to the part of said premises heretofore allotted to her by parol, the commissioners who may be appointed in the action for said purpose be required in such partition to allot the same to her, and in so doing shall not take into consideration the improvements placed thereon by the defendants since their possession of the same." Section 9 of the complaint alleges that Henrietta Capehart claims to be an heir-at-law of Moses Hoggard, and as such to be entitled to a share in the land; but these petitioners deny that she owns any interest

in it, and aver that they are the owners of the land, and are tenants in common in the following proportion, to-wit: Isaac Mebane, one-third; Mary E. Holley, one-third, and Sabray Holley, one-third. In reply to this section of the complaint the defendants allege that Henrietta does claim an interest in the land, to-wit: one-fourth thereof, but denies that the plaintiffs are the owners of the whole thereof, but, on the contrary, aver that each of the plaintiffs own, respectively, but one-fourth interest, making in all three-fourths thereof, and that said Henrietta owns the remaining one-fourth share; wherefore, defendants demand that the premises be actually partitioned, and that the share heretofore allotted to her by parol be allotted as her share thereof, and for such other and further relief, etc.

The evidence of the plaintiffs was as follows:

Isaac Mebane: "I am 47 years old. My father was Moses Hoggard, and my mother was Zylphia Hoggard. Both dead. Their children born to them in slavery were Mary E. Holley, Isaac Mebane and Sarah Ann Holley. Zylphia had another child—Henrietta, the defendant. When she was born my father was hired out in Martin County and was gone the whole of that year. He left home in January, and did not return until Christmas following, and Henrietta was born the February after that. He had been gone twelve months before Christmas." The plaintiffs here offered to prove that when Moses came home that Christmas, having been absent a year, he found Zylphia heavy with child, pregnant, and that he on that account separated from her, and lived apart from her several years before they made up. This was objected to by defendants. Objection sustained, and defendants excepted. The plaintiffs here offered to show what was the neighborhood report as to the paternity of Henrietta Capehart. The defendants ob-

jected.  Objection sustained, and plaintiffs excepted.  Plaintiffs then offered to show that she was not regarded and treated by the neighbors and her race as the child of Moses. Objected to by defendants.  Objection sustained.  Plaintiffs excepted.  The plaintiffs then offered to show declarations made by Zylphia, the mother of Henrietta, to the effect that Moses was not the father of Henrietta, but that Bennett Morris was her father.  Objected to by defendants.  Objection sustained.  Plaintiffs excepted.  Isaac Mebane also testified that his father did not come home at all, or see his mother, for twelve months just prior to Henrietta's birth.  "We had a land division, and no part was allotted to Henrietta.  One share was allotted to my mother as her dower."  It was also attempted by plaintiffs to show that after the war, when they had gone before a Justice of the Peace, and acknowledged themselves man and wife, Moses and Zylphia had repeated quarrels as to the paternity of Henrietta.  Defendants objected.  Objection sustained.  Plaintiffs excepted.

Mary Holley testified:  "I am 52 years old.  My father was Moses Hoggard, and my mother Zylphia.  I know when Henrietta was born.  The year before her birth Moses was in Martin County.  He stayed away all the year, and did not come home.  When he got home, having been gone a year, he found mother pregnant."  Plaintiffs offered to show by this witness the disturbance between Moses and Zylphia as to the paternity of Henrietta as above.  Objection by defendants. Objection sustained, and plaintiffs excepted.  Plaintiffs offered to show that nine months prior to birth of Henrietta, and at a time when Moses was in Martin County, thirty miles away, Bennett Morris was a constant visitor at Zylphia's house.  Objected to by defendants.  Objection sustained, and plaintiffs excepted.  It was proposed to show that after Henrietta was born Morris brought presents there for her.

Objected to by defendants. Objection sustained, and plaintiffs excepted. It was proved that Henrietta went over in another county, and lived with Bennett Morris several years. It was also proposed to show by this witness that Zylphia denied that Moses was the father of Henrietta. Objected to by defendants. Objection sustained. Plaintiffs excepted. It was also proposed to show by this witness that Moses treated Henrietta different from his children, and that he denied he was her father. Objected to by defendants. Objection sustained, and plaintiffs excepted. Plaintiffs introduced one Darvey Overton, who was not kin to either Moses or Zylphia, and proposed to show by him that he had heard both Moses and Zylphia say that Moses was not the father of Henrietta; that Moses treated her different from the other children; that he and his wife were constantly at war on the paternity of Henrietta; and that Zylphia had exclusive control of Henrietta, and hired her out, and received her wages—to all of which the defendant objected. Objection sustained, and plaintiffs excepted. The defendants introduced no evidence. Plaintiffs asked the Court to instruct the jury as follows: "If the jury believe the evidence, they will answer, 'No.'" Declined, and the plaintiffs excepted. "That the presumption of legitimacy arising when children are born of a marriage does not arise in the case of slaves, and there is no presumption of legitimacy coming from slave cohabitation." This was refused, and the Court charged the jury that when it is shown or admitted that Moses and Zylphia, colored people, lived together as man and wife prior to 1866, and that they were married under the act providing for the marriage of colored people living together prior thereto, and that Henrietta was born while they so lived as man and wife, she is presumed to be their child, and the burden is on the plaintiffs to show that she is an illegitimate child, that they must

show that while they so lived as man and wife it was impossible for him to have been the father. To this the plaintiffs excepted. After the jury retired, the plaintiffs moved for judgment for want of a properly verified answer. This was refused, and defendants permitted to properly verify answer. To this the plaintiffs excepted. The issue was, is defendant Henrietta Capehart the child of Moses Hoggard and Zylphia Hoggard? The jury answered "Yes." Plaintiffs moved for a new trial on the ground that the Court erred in excluding evidence as set out above, and in declining to charge as requested, and in giving the charge excepted to. The plaintiffs appealed from the judgment rendered.

*Francis D. Winston,* for plaintiffs.
*R. B. Peebles,* for defendants.

FURCHES, J. (after stating the facts). This is a proceeding to partition land among the heirs-at-law of Moses Hoggard. It is admitted that the plaintiffs are heirs of the said Moses, but they deny that the defendant Henrietta Capehart is the child and heir-at-law of the said Moses. The said Moses was a slave, and had a woman named Zylphia, who was also a slave, for his wife. After their emancipation they were married under the provisions of the act of 1866. The plaintiffs and the defendant were all children of Zylphia, and were all born during the time Moses claimed Zylphia as his wife. But the plaintiffs allege that Moses was hired out in Martin County, some thirty miles from where Zylphia lived, the year before the defendant was born in February, and had not been home during the year preceding her birth, and was not her father, but a colored man named Ben Morris was. For the purpose of proving that Moses was not the defendant's father, the plaintiffs offered evidence to prove

127——4

that Moses was hired out as stated above; and in addition to this evidence they offered to show that when Moses came home at Christmas, before the defendant was born, he found Zylphia heavy with child, and that he left her, and they did not live together as husband and wife for two or three years. But they "made up" their troubles, and again lived together as man and wife, and were so living when they were emancipated. The plaintiffs also offered evidence to prove that Moses and Zylphia quarreled about the paternity of the dedefendant, in which Moses alleged that he was not the father of the defendant, and Zylphia admitted that he was not, but stated that Ben Morris was her father. The plaintiffs also proposed to show by evidence that Ben Morris was a frequent visitor of Zylphia during the absence of Moses, and made presents to the defendant in recognition of his paternity, as the plaintiffs allege. But all this evidence was objected to by the defendants, and excluded by the Court, and in this there was error. It seems to us that the cases of *Erwin v. Bailey,* 123 N. C., 628, and *Woodard v. Blue,* 107 N. C., 407, fully sustain our ruling, and show that this evidence excluded by the Court should have been admitted; and the whole matters involved in these exceptions have been so fully discussed in these cases that we do not feel called upon to repeat the argument in this case. There was error in excluding this evidence, for which the plaintiffs are entitled to a new trial.