THE BETHANY HOSPITAL COMPANY v. EMMA SWARTZ HALE.

No. 12,111.   (67 Pac. 848.)

SYLLABUS BY THE COURT.

1. ILLEGITIMATE CHILD—*Presumption of Law*. A child born in wedlock is presumed to be legitimate, and this presumption cannot be overthrown by the general and notorious recognition of it by a putative father, or by his assertions, however solemnly expressed, that the child was begotten by him.

2. —————— *Evidence Necessary to Overcome Presumption*. Testimony was introduced which tended to show that a woman who claimed to be the illegitimate daughter and sole heir of an unmarried man was born in wedlock. *Held*, that the presumption of legitimacy could only be overcome by the clearest and most conclusive evidence of non-access by the husband.

Error from Jewell district court; R. M. PICKLER, judge. Opinion filed February 8, 1902. Reversed.

*R. W. Turner*, and *Winfield Freeman*, for plaintiff in error.

*R. H. McBride*, and *T. S. Kirkpatrick*, for defendant in error.

The opinion of the court was delivered by

SMITH, J. : William Swartz, a bachelor sixty years of age, died in Bethany hospital, at Kansas City, Kan., in February, 1900. He left a will by which there was bequeathed to one C. Hale the sum of $1200, and to John Kelly some small notes and accounts. The residue of his estate was bequeathed to the Bethany Hospital Company. The deceased was an inhabitant of Jewell county. When the will was offered for probate in that county, the defendant in error, Emma Swartz Hale, resisted its probate, asserting an inheritable interest in the property of the

deceased, based on the claim that she was his illegitimate daughter. The will was attacked for testamentary incapacity in the maker, undue influence, and disqualification of the witnesses to it. The judgment below was against the validity of the will.

The important question is whether the defendant in error has established the fact of her illegitimacy by legal proof. Counsel for defendant in error in the court below seems to have proceeded upon the theory that the status of the woman as sole heir of the testator was sufficiently proved by his general and notorious recognition of her as his daughter, and by letters in which he addressed her as such. The statute reads :

"Illegitimate children inherit from the mother, and the mother from the children." (Gen. Stat. 1901, § 2523.)

"They shall also inherit from the father whenever they have been recognized by him as his children; but such recognition must have been general and notorious, or else in writing." (§ 2524.)

Two witnesses for the defendant in error who knew her mother testified as follows :

Mr. Patterson :

"Ques. When you first knew this defendant in this action she was a baby living with Mrs. Minos, her mother? Ans. I think her mother's name was Danielson ; I think it was ; I wouldn't be positive.

"Q. You knew the mother, did you not? A. Yes, sir.

"Q. And you knew Mr. Minos? A. Yes, sir.

"Q. And her mother and Mr. Minos were husband and wife living there in that neighborhood? A. Yes, sir.

"Q. And at that time this defendant was living with them? 'A. I think so.

"Q. How old was she then, or how long ago was

that?   A. I think she was just a baby when her mother was shot—killed.   How old she was I don't know; I think she was a nursing baby; that is my opinion; it has been quite a while ago; I can't hardly tell.

"Q. Was she born while her mother was the wife of Minos or while her mother was the wife of Danielson?   A. I think she was born while she was the wife of Danielson.

"Q. And previous to that—?   A. It has been quite a while ago.   I might get some of those things wrong.

"Q. Previous to that her mother had been the wife of a man named Minos?   A. Yes, sir.

"Q. Previous to being the wife of Danielson?   A. Yes, sir.

"Q. Is it Danielsōn or Daniels?   A. I don't know that.

"Q. Her mother was shot while she was the wife of—?   A. Danielson."

Mr. Dunston:

"Ques. How old was she when you first saw her?   Ans. About a year, maybe.

"Q. About a year?   A. Yes; some such matter.

"Q. Where was she living at that time?   A. With her mother.

"Q. Where was her mother living?   A. Living on this farm north of William Swartz's—joining William Swartz's.

"Q. Farm north of William Swartz's?   A. Yes, sir.

"Q. What was her mother's name?   A. Minos.

"Q. Was she living with Mr. Minos at that time?   A. No, sir.   Mr. Minos was drowned with his team in '73; the month of July, I think.

"Q. When was this that you saw this child?   A. In '78.

"Q. And was she at that time a baby?   A. Yes, sir.   I couldn't tell just the age.

"Q. About how old, as near as you can tell?   A. Somewhere about a year, I think.   I don't know.

"Q. This defendant then was known as Emma Minos, was she ?  A.  Emma Swartz Minos.  That is the name, I think, that is in the patent that I proved up as guardian for the minor heirs.

"Q.  The name of this defendant at the time you first knew her ?  She was called Danielson, was she not ?  A.  I don't remember, because I didn't know her name.

"Q.  When did you first see her when she was about a year old ?  Was it before or after her mother was married ?  A.  Before her mother was married.

"Q. And she had married a man by the name of Danielson ?  A.  Yes, sir.

"Q.  Prior to the time she was killed ?  A.  Yes, sir."

Cross-examination :

"Ques.  Do you know whether, at the time you saw the defendant first, her mother was the wife of Danielson or not ?  Ans.  Yes, sir.

"Q.  She was living with Danielson at that time ?  A.  Yes, sir.

"Q.  And this child was about a year old ?  A.  I couldn't tell what age.  I didn't ask—

"Q.  How long had she been living with Danielson ?  A.  I don't know.

"Q.  About how long, as near as you can remember ?  A.  I don't know."

This was all the evidence in the case bearing on the question of legitimacy, except the declarations of the testator.  It will be seen that both witnesses stated that when the defendant in error was a baby her mother was the wife of one Danielson, and lived with him.  Mr. Patterson testified that when the child was born Danielson was the husband of its mother.  In the testimony of Mr. Dunston in chief he seems to say that when he first saw the child her mother was not married, but in cross-examination he stated clearly that her mother was at that time the wife of Danielson.

The fact of recognition of the defendant in error by Swartz as his daughter could confer on her no inheritable rights as his heir unless her illegitimacy was first established. A child born in wedlock is presumed to be legitimate, and public policy does not permit this presumption to be overthrown by the assertion, however solemnly made, by a putative father that the child was begotten by him. (*Orthwein v. Thomas et al.*, 127 Ill. 554, 21 N. E. 430, 11 Am. St. Rep. 159, 4 L. R. A. 434.)

In this case the recognition of the defendant in error by Swartz is sufficiently established, both by oral declarations publicly made, and in letters written by him to her. If, however, she was born in wedlock when her mother was either the wife of Minos or of Danielson, the presumption of legitimacy attached, and could only be overcome by the clearest and most conclusive evidence of non-access of the husband. (*Watts and husband v. Owens*, 62 Wis. 512, 22 N. W. 720; *Hargrave v. Hargrave*, 9 Beav. 552; 2 Greenl. Ev. [Lewis's ed.] § 150 and note.)

We cannot say that the court erred in overruling the motion made by the proponent to suppress the depositions of H. G. Lazear and wife.

The testimony conflicted, and was largely oral. Its credibility was a matter for the trial court to pass on.

The refusal of the court to require the defendant in error to set forth in writing the grounds for resisting the probate of the will was not an erroneous ruling. There is no statutory requirement that such objections shall be made in writing. (*K. C. W. & N. W. Rld. Co. v. Kennedy*, 49 Kan. 19, 30 Pac. 126.)

The judgment of the court below will be reversed and a new trial ordered.

DOSTER, C. J., POLLOCK, J., concurring.