16556

BARR'S NEXT OF KIN *ET AL.* v. CHEROKEE, INC. *ET AL.*
(68 S. E. (2d) 440)

448

*Messrs. T. B. Bryant, Jr.,* and *Fred R. Fanning, Jr.,* of Orangeburg, *for Appellants,*

*Messrs. C. T. Graydon* and *J. Bratton Davis,* of Columbia, *for the Respondent, Darnell Brayboy Brazell as Guardian ad Litem for Margaret Carol,*

452

November 7, 1951.

FISHBURNE, Justice.

On September 5, 1949, McCoy Barr. an unmarried man,. was killed by accident while in the employ of the defendant, Cherokee, Inc. The employer and its insurance carrier, St. Paul Mercury Indemnity Company, admit that they are liable in the maximum amount of $6,000.00, and are prepared to pay the benefits to such parties as may be entitled thereto under the Workmen's Compensation Act. Claim was filed with the Industrial Commission by the father, mother and two brothers of McCoy Barr, as next of kin. In opposition, a claim was filed with the Commission for the benefits under the Workmen's Compensation Act by Darnell Brayboy Brazell, as guardian ad litem for Betty Lou Brazell and Margaret Carol Brazell, alleged illegitimate daughters of the deceased, dependent upon him for support.

After hearing the evidence, the Commissioner before whom the testimony was taken, disallowed the claim of Betty Lou. Brazell and the Next of Kin, but found as a fact that Margaret Carol Brazell is the illegitimate child of the de-

ceased McCoy Barr by Darnell Brazell, and wholly dependent upon him at the time of his death; hence the entire amount of benefits was ordered to be paid to her general guardian.

Upon appeal to the full Commission, the findings of fact and conclusions of law of the single Commissioner were reversed, and in an order signed by a majority of the Commission, it was held that the claimant, Margaret Carol Brazell is not the illegitimate child of the deceased, and not dependent upon him for support. It was further ordered that the entire amount of benefits under the Workmen's Compensation Law be paid to the next of kin of the deceased, McCoy Barr.

Appeal being taken to the Court of Common Pleas for Richland County, the order of the Commission was reversed, and the finding and award of the single Commissioner, holding that Margaret Carol Brazell is the illegimate child of the deceased and entitled to all the benefits,—was reinstated. This appeal by the Next of Kin brings up for review the correctness of the Circuit Decree, and the issue presented involving the legitimacy or illegitimacy of Margaret Carol Brazell.

Curtis Brazell and Darnell Brayboy, mother of Margaret Carol Brazell, were married in 1938 and resided in Columbia. After her marriage, she gave birth to three children,—Margaret Carol, who was born November 9, 1947, being the youngest. Both husband and wife testified that they separated the latter part of December, 1946, and stayed separate and apart until December, 1947, and that throughout this time they never lived together as man and wife, nor had sexual intercourse. The wife, Darnell, stated that during this period of separation,—that is, from March 30, 1947 until May 11, 1947,—she went to Jacksonville, Florida, with the deceased, McCoy Barr, cohabited with him as his wife while there, and became pregnant with Margaret Carol. She testified positively that McCoy Barr was the father of the child; and

her husband, Curtis Brazell, testified with equal emphasis that he is not her father.

Upon her return to Columbia, where the child was born, the husband and wife lived apart until about two weeks after the birth of Margaret Carol, which, as stated, occurred on November 9, 1947. The husband and wife, Curtis and Darnell, then became reunited, according to their testimony, and lived together as husband and wife for several months, following which they again separated and she resumed her illicit relations with McCoy Barr. However, it may be inferred that the husband and wife are now again living together.

We are concerned here with the admissibility and sufficiency of evidence to prove the illegitimacy of a child born in wedlock, because there is no dispute that Curtis and Darnell were legally married.

Throughout the taking of the testimony before the single Commissioner, the husband and wife were allowed to testify, over objection of appellants' counsel, as to the illegitimacy of Margaret Carol, and to testify to alleged facts which tended to prove non-access on the part of the husband. This testimony was ruled admissible and competent, and was so considered by the circuit court in passing upon the issue of illegitimacy.

It seems now to be well established in most jurisdictions, that unless otherwise provided by statute, neither husband nor wife may testify as to non-access between them in any case where the question of the legitimacy of a child born in wedlock is in issue. The evidence of non-access must come from third persons. 7 Am. Jur., Sec. 21, Page 640; Annotations, 69 Am. St. Rep. 571; 126 Am. St. Rep. 261.

In Jones on Evidence, Second Edition, Sec. 97(96), Page 102, the rule is stated as follows:

"It is well settled on grounds of public policy, affecting the children born during the marriage, as well as the parties

themselves, that the presumption of legitimacy as to children born in lawful wedlock cannot be rebutted by the testimony of the husband or the wife to the effect that sexual intercourse has or has not taken place between them; nor are the declarations of such husband and wife competent as bearing on the question. The rule not only excludes direct testimony concerning such intercourse, but all testimony of such husband or wife which has a tendency to prove or disprove legitimacy; for example, it was held incompetent to ask the husband, for the purpose of proving non-access, whether at a given time he did not live a hundred miles away from his wife and whether at that time he was not cohabiting with another person. Testimony of either party tending to show non-intercourse, or of any fact from which non-access may be inferred, or of any collateral facts connected with the main fact, should be scrupulously excluded, and if the illegitimacy is to be proved, it must be proved by other testimony.

"The rule rests not only on the ground that it tends to prevent family dissension, but on broad grounds of public policy; hence it applies when at the time of the examination of the husband or wife the other spouse is- dead. Nor is the rule affected by the provisions of the codes enlarging the competency of the witnesses; nor does it depend upon the form of action or the parties; on the contrary it obtains whatever the form of legal proceedings, or whoever may be the parties. * * * While the rule prevents the wife from testifying that she has not had intercourse with her husband, it does not prevent the wife from testifying that another person than her husband has had or has not had connection with her."

The rule and the reasons therefor are well stated in *Mink v. State,* 60 Wis. 583 19 N. W. 445, 446, 50 Am. Rep. 386, where the court said: "This rule is founded on the very highest grounds of public policy, decency, and morality. The presumption of the law is in such a case that the husband had access to the wife, and this presumption must be

overcome by the clearest evidence that it was impossible for him, by reason of impotency or imbecility, or entire absence from the place where the wife was during such time, to have had access to the wife, or to be the father of the child."

Although the direct question has never been passed upon by our court, the above stated rule, we think, is founded upon sound public policy and should be adhered to.

The presumption of legitimacy, although rebuttable, is one of the strongest known to the law. 10 C. J. S., Bastards, § 3b, page 18. No child born in lawful wedlock can be decreed a bastard on any showing of circumstances which only create doubt and suspicion. *Tarleton v. Thompson*, 125 S. C. 182, 118 S. E. 421; *State v. Shumpert*, 1 S. C. 85; *Kinnington v. Cato*, 68 S. C. 470, 47 S. E. 719.

As was stated by this court in *Wilson v. Babb*, 18 S. C. 59: "The true test is whether the husband of the woman who gives birth to the child is its father; and this must, of necessity, in every case, be a question of fact. Where the child is born after lawful wedlock, and after the lapse of the usual period of gestation, it should require a very strong state of circumstances to overthrow the presumption of legitimacy, such as impossibility of access, absolute non-access, abandonment, or something equally as conclusive."

And it was held in the foregoing case that the burden in such cases is cast upon the party impeaching legitimacy, and such issue may be proved by any competent testimony sufficient to satisfy the mind of the tribunal before whom the question is raised.

In our view of the law, the lower court committed error, as did the hearing commissioner, in receiving and considering the evidence of non-access and illegitimacy given by Curtis Brazell and Darnell Brazell, the husband and wife.

With the testimony of husband and wife excluded, it becomes necessary to determine whether the record contains sufficient evidence from third persons upon which to make a finding of illegitimacy of Margaret Carol. While the rule above quoted from Jones on Evidence prevents the wife from testifying that she has not had intercourse with her husband, it does not prevent her from testifying as to illicit relations with other men in actions directly involving the parentage of the child.

It was stated in *Kennington v. Catoe*, 68 S. C. 470, 47 S. E. 719, that the unchaste conduct of the wife with reference to other men would not have the tendency to overthrow the presumption of legitimacy, unless it related closely to the period when the child was begotten. And the court held in *State v. Shumpert*, 1 S. C. 85, that no rule of law declares that a child is a bastard if the husband of its mother be absent during the nine months preceding its birth—what was the actual period of gestation in any particular case being a question of fact for the jury.

In our opinion, there is no testimony in this record, when we exclude the evidence of the husband and wife, as to illegitimacy—to reasonably warrant the inference of non-access on the part of the husband, Curtis Brazell, although his wife did have illicit relations with another man,—certainly not sufficient evidence to overcome the presumption that Curtis Brazell is the father of Margaret Carol.

There is considerable evidence from third persons that the deceased, McCoy Barr, asserted that he was the father of Margaret Carol, and claimed and treated her as his child. And, further, that McCoy Barr helped to support and care for Margaret Carol, and was living during the week ends with her and her mother during the last month and a half preceding his death. There is also testimony that there is a strong physical ressemblance between Margaret Carol and her reputed father. Mrs. Brayboy, the mother of Darnell Brazell, testified that she did not know if her daughter, Dar-

nell, was pregnant before she left for Florida, but did not think she was.

In opposition to the foregoing testimony, the birth certificate of Margaret Carol issued by the State Board of Health, was offered in evidence. The child's name as therein entered is "Margaret Carol Brazell," and the father's name is given as "Curtis Ellis Brazell." Darnell Brazell, the mother, admitted that she gave her husband's name to the child, as above quoted, while she was in a Columbia hospital, two days after her birth; but she denies that she told the registrar that her husband Curtis, was the father of the child. However, she was at that time separated from her husband, and there is nothing in the record which could reasonably indicate that this information could have come from any source other than the mother, Darnell Brazell. This certificate constituted *prima facie* evidence of its contents, and on the whole record it was for the Industrial Commission to determine the truth of what it contained.

Code Section 7035-2(1) of the Workmen's Compensation Act provides that "the term 'child' shall include a posthumous child * * * and a stepchild or acknowledged illegitimate child dependent upon the deceased * * *." And it is contended by respondent that the General Assembly, having seen fit to provide compensation for an acknowledged illegimate child, it is the duty of the Industrial Commission and the courts to see that the intent of the legislature is carried out. In support of this contention, the case of *Lippard v. Southeastern Express Co.*, 207 N. C. 507, 177 S. E. 801, 802, is cited. In that case the North Carolina court stated: "The philosophy of the common law which denied an illegimate child any rights, legal or social, as against its father, and imposed no duty upon the father with respect to the child, is discarded by the statute."

But counsel overlook that in that case there was no controversial issue as to whether the child there involved was

legitimate or illegitimate. The issue there presented, as stated by the court, was, "* * * [W]hether an illegitimate child born after the death of its father, who before his death had acknowledged his paternity of the child, is a dependent of its deceased father, within the provisions of the North Carolina Workmen's Compensation Act (Pub. Laws, 1929, e, 120)."

It was undoubtedly the purpose of our Workmen's Compensation Law to abrogate the common law rule with reference to illegitimacy, but the section, 7035-2(1), applies to children who are established as being illegitimate and acknowledged by the putative father. In our opinion, however, it was never intended to abrogate the rule of evidence founded upon the reasoning and experience of ages, which forbids either a husband or a wife to bastardize a child born in lawful wedlock. Nor was it intended to break down a rule founded in decency, morality, and public policy.

This question arose in the case of *U. S. Fidelity & Guaranty Co. v. Henderson,* 1932, Tex. Civ. App., 53 S. W. (2d) 811, which was an action involving the right to an award of workmen's compensation by minors claiming to be the children of the deceased workman. It was held that their mother, who had been living with the deceased workman, as his wife, was not competent to testify that she had not cohabited with one to whom she was legally married. The court stated that the law is settled that the testimony of neither the father nor the mother is admissible to prove the illegitimacy of a child born to them in wedlock, or to establish any facts tending to show that the child was illegitimate.

It has been held that recognition by a putative father is not sufficient to overthrow the presumption of legitimacy arising from birth during w e d l o c k. *Bethany Hospital Co. v. Hale,* 64 Kan. 367, 67 P. 848. And this presumption of legitimacy is not rebutted by mere proof of adultery on the part of the wife during the period of gestation. *Canaan v. Avery,* 72 N. H. 591, 58 A. 509. Nor can it be rebutted by general reputation that the child

was an illegitimate child. *Erwin v. Bailey,* 123 N. C. 628, 31 S. E. 844.

An effort was made to show that the husband, Curtis Brazell. was in Ridgewood Sanitarium when the child, Margaret Carol, would, according to the laws of nature, have been begotton. However, the records of this sanitarium were introduced in evidence showing that he entered the Ridgewood Sanitarium on July 10, 1947, several months after the child could have been begotten, and there is no sufficient evidence in the record to show that prior to this time there was non-access to his wife, the mother of the child.

After a careful consideration of the record and the able briefs submitted by counsel, it is our opinion that the finding and award of the majority Commission should be reinstated, and the circuit decree reversed.

Judgment reversed.

STUKES, TAYLOR and OXNER, JJ., concur.

BAKER, C. J., dissents.

BAKER, Chief Justice (dissenting).

As always I dislike and hesitate to disagree with an opinion written by a member of this Court. But I think that the general rule that a husband and wife are not permitted to give testimony which has a tendency to disprove the legitimacy of a child, such as proving non-access or lack of sexual intercourse during the period of gestation, should not be applied to deprive a dependent child of the benefits under our Workmen's Compensation law that are accorded to an illegitimate minor child of a putative father upon whom such child was dependent for support. However, aside from this, it appears to me that the only reasonable inference from other testimony in the record, establishes that the child (Margaret Carol), was an illegitimate and the child of McCoy Barr, the deceased, and dependent upon him for support; and that the presumption that this child was the child of the husband, Curtis Brazell, has been completely rebutted.

It seems to me that the only conclusion which could have been reached was that reached by the Circuit Judge, and that his order should be affirmed. Let the order be reported.