697 S.E.2d 548

**James FISHER, Respondent,**

v.

**Jill M. TUCKER and Tommy C. Tucker, Appellants.**

No. 26845.

Supreme Court of South Carolina.

Heard May 27, 2010.

Decided July 26, 2010.

William Patrick Yon, of Chapman Byrholdt & Yon, of Anderson, for Appellants.

Kenneth Philip Shabel, of Campbell & Shabel, of Spartanburg, for Respondent.

Mary Jane Goodwin, of Anderson, Guardian Ad Litem.

Justice PLEICONES.

This is a parental rights case concerning the paternity of a child born in wedlock. The family court ruled against the mother and her husband, who sought to have the child de-

clared a child of their marriage, and they appealed. We affirm.

## FACTS

James Fisher and Jill Tucker met in March 2005, and began a sexual relationship that same month. At that time, Ms. Tucker was married to and residing with Tommy Tucker. In March 2006, Ms. Tucker revealed to Mr. Fisher that she was pregnant and in July 2006, Ms. Tucker, along with two of her children, moved in with Mr. Fisher. According to Mr. Fisher, Ms. Tucker told him that he was the father of her unborn child.

Mr. Fisher testified that he attended all doctor's appointments with Ms. Tucker, was present at the hospital on October 13, 2006, when the child was born, and spent three days at the hospital following the birth when the child was admitted to the neonatal intensive care unit. The child was given Mr. Fisher's surname.

Following the birth of the child, Ms. Tucker was required to complete a form for state records. A hospital employee testified that, based on conversations with Ms. Tucker, Mr. Tucker was not the father of the child. The employee advised Ms. Tucker that "when a mother is married to her husband and another man is involved as the father of the child, that she could not list her husband's name on the baby's birth certificate, that she could put [']refused['] on there." As a result, Ms. Tucker wrote "Refused" in the box marked "Father's Current Legal Name." The hospital provided a "complimentary birth certificate" which listed Mr. Fisher as the child's father.

Ms. Tucker and her children continued to live with Mr. Fisher after the birth of the child. Mr. Fisher testified that he and Ms. Tucker sent out birth announcements to family and friends and published a birth announcement in the local newspaper. In January 2007, Ms. Tucker returned to her husband. A few months later, Ms. Tucker took the child to the doctor's office and, in filling out the paperwork, listed Mr. Fisher as the child's father. Ms. Tucker used Mr. Fisher's insurance for the visit.

In March 2007, Fisher filed this action seeking a declaration of paternity. Mr. and Ms. Tucker requested that the judge deny Fisher's request and declare the child to be a child of their marriage. In April 2007, a temporary hearing was held at which time a guardian *ad litem* was appointed for the child and Mr. Tucker was ordered to undergo paternity testing. The test revealed a 0.00% probability of Mr. Tucker being the father of the child. Prior to Ms. Tucker moving out of his home, Mr. Fisher had arranged for a paternity test which revealed a 99.999% probability of Fisher being the father of the child.

The matter was tried in the family court. At trial, Mr. Tucker testified that he was residing with and had sexual intercourse with Ms. Tucker during the month in which the child was conceived. Mr. Tucker also admitted that he had a vasectomy approximately ten years before the birth of the child and used protection during sexual intercourse with Ms. Tucker during the month of conception. Ms. Tucker testified that she had sexual intercourse with Mr. Fisher during the month of conception but did not use protection.

The trial court issued an order of paternity finding for Mr. Fisher. Mr. and Ms. Tucker appealed. This Court certified the case for review pursuant to Rule 204(b), SCACR.

## STANDARD OF REVIEW

In appeals from the family court, the appellate court has jurisdiction to find facts in accordance with its view of the preponderance of the evidence. *See Strickland v. Strickland,* 375 S.C. 76, 82, 650 S.E.2d 465, 469 (2007). However, this broad scope of review does not require this Court to disregard the findings of the family court. *See Wooten v. Wooten,* 364 S.C. 532, 540, 615 S.E.2d 98, 102 (2005).

## ISSUES

I.   Did the family court err in finding that Fisher overcame the presumption of legitimacy?

II.  Did the family court err in adopting the doctrine of paternity by estoppel?

III.  Is the "deeply rooted interest in maintenance of the family unit" protected by upholding the presumption of legitimacy?

## DISCUSSION

### I.  Presumption of legitimacy

■  The Tuckers argue that the family court erred in finding that Fisher defeated South Carolina's common law presumption of legitimacy.  In short, the Tuckers contend that "even though Mr. Fisher has provided evidence to show doubt and suspicion that the child is legitimate, he has not provided the necessary facts to overcome the presumption that the child is a legitimate product of Mr. and Ms. Tucker's marriage." We disagree.  We find the statutory presumption, rather than the common law presumption, controls in the instant case.

■  In South Carolina, there is a common law presumption that a child born during lawful wedlock is a child of the marriage.  *See Barr's Next of Kin v. Cherokee, Inc.,* 220 S.C. 447, 68 S.E.2d 440 (1951), *superseded by statute on other grounds as recognized in South Carolina Dep't of Soc. Serv. v. Burris,* 297 S.C. 537, 539, 377 S.E.2d 578, 579 (1989).  "Where the child is born after lawful wedlock, and after the lapse of the usual period of gestation, it should require *a very strong state of circumstances* to overthrow the presumption of legitimacy, such as impossibility of access, absolute non-access, ab[a]ndonment, or *something equally as conclusive." Id.* (emphasis added).

Despite the common law presumption, the family court found a "rebuttable presumption" of Mr. Fisher's paternity was created under S.C.Code Ann. § 20–7–956(A)(3) (2007).[1] The family court further found that Fisher had overcome the common-law presumption of legitimacy.  *Id.* We agree with the family court and believe the court properly determined paternity.

S.C.Code Ann. § 20–7–956(A) provided:  "[t]he following evidence is admissible at a hearing to determine paternity ... (3) Test results which show a statistical probability of paterni-

1.  This section is now codified at S.C.Code Ann. § 63–17–60(A)(3) (2010).

ty.  A statistical probability of ninety-five percent or higher creates a rebuttable presumption of the putative father's paternity." S.C.Code Ann. § 20–7–956(A)(3) (2007).  At trial, Fisher presented the results of a test with the DNA Diagnostic Center showing a statistical probability of 99.999% that he was the father of the child.  Consequently, there arose a rebuttable statutory presumption that Fisher is the father. *See* S.C.Code Ann. § 20–7–956(A)(3) (2007).

We find Mr. and Ms. Tucker produced no evidence to rebut this presumption.  The Tuckers demonstrated only that they were married at the time of Leigha's birth and had sexual intercourse during the month of conception.  At trial and in their brief, they seem to rely on the common-law presumption.  However, common law rules must yield to statutes enacted by the General Assembly.  *See Burris,* 297 S.C. at 539, 377 S.E.2d at 579 (holding Lord Mansfield's rule superseded by statute specifying parentage as a permissible subject for husband and wife testimony).  Accordingly, under the facts of this case the statutory presumption controls and the Tuckers failed to overcome the presumption.[2]

The Tuckers contend that the common law presumption controls despite the statutory presumption found in S.C.Code Ann. § 20–7–956(A)(3).  They base their argument on *Burris,* and specifically on the Court's holding that the common law presumption "is not affected by" another provision of § 20–7–956—subsection (5).  We find the Court's holding in *Burris* simply recognizes the absence of a conflict between subsection (5) and the common law presumption and is therefore not on point.

Moreover, even if we were to hold the common law presumption controlled, we are confident that Fisher overcame the presumption.  Fisher presented evidence of two genetic tests, one showing him to have a 99.999% probability of being the child's father and the other showing Mr. Tucker to have a 0% probability.  Significantly, Fisher elicited testimony establishing that Mr. Tucker had undergone a vasectomy and used

---

2.  We note that the common law presumption may still control in other parental rights cases.  Under the facts of this case, however, where a person has met the requirements of § 20–7–956(A)(3), the rebuttable presumption set forth by the General Assembly controls.

protection while having sexual intercourse during the month of conception. These facts are tantamount to a showing of infertility and constitute "something equally as conclusive" as the examples, set forth in *Burris,* to overcome the presumption of legitimacy.

## CONCLUSION

We find the family court properly determined paternity. Mr. Fisher was entitled to a rebuttable presumption of paternity under § 20–7–956(A)(3) and the Tuckers failed to overcome that presumption. The order of the family court is therefore

**AFFIRMED.**

TOAL, C.J., BEATTY, KITTREDGE and HEARN, JJ., concur.