State v. Danforth.

---

## THE STATE v. DANFORTH.

1. **Evidence:** SEDUCTION: CORROBORATION OF PROSECUTRIX. In the trial of an indictment for seduction, the infant alleged to be the fruit thereof cannot be offered in evidence to corroborate the prosecutrix by reason of a supposed resemblance between the child and the defendant.

| 48 | 43 |
| 112 | 417 |
| 48 | 43 |
| f140 | 544 |
| 48 | 43 |
| e144 | 258 |
| c144 | 259 |

*Appeal from Poweshiek District Court.*

TUESDAY, APRIL 2.

THE defendant was indicted for unlawfully having carnal knowledge of a female, by administering to her a substance, and

by other means producing such stupor and imbecility of mind and weakness of body as to prevent effectual resistance.

Upon a trial there was a verdict of guilty, and judgment that defendant be confined in the penitentiary for ten years. Defendant appeals.

*John F. Lacey* and *W. R. Lewis,* for appellant.

*J. F. McJunkin, Attorney General,* for the State.

ROTHROCK, CH. J.—The following is the substance of the testimony of Ellen N. Patterson, the complaining witness:

On the evening of the 21st day of February, 1875, witness and her brother, Fred. Patterson, went in a sleigh to Lynnville, to meeting. The defendant was at the meeting. At the edge of town, as they were starting home, defendant called Fred. to him, and they took a drink of liquor together. About a half mile further on, Fred. called to defendant, who was in the sleigh behind witness and her brother, to get into the sleigh with them, which he did. Defendant took out his bottle and both he and Fred. put it to their mouths, and then defendant handed it to the witness. She said she did not want any, but her brother said to take a drink; it was nothing but whisky. She took a small sup. They drove on a little further, and the sleigh broke down. They tried to fix it, and failed to do so. They were then over a mile from Searsboro, the place of defendant's residence. Defendant proposed that Fred. should take the team home, and that the witness should walk over to defendant's house with him. They walked along together and talked about the sleigh breaking down. Stopped once to see if Fred. was going all right with the team, and looked back, but did not see him. Defendant said he thought Fred. was drunk, and witness said she guessed so too. The next thing she knew, she was in defendant's saloon in Searsboro, near midnight, sitting on a bench beside defendant, with her head on his shoulder, and his arm around her, and her drawers unfastened. She went to the door

and found it was locked. Asked defendant to take her home. He unlocked the door and took her to his house, which was near by. She knew, by a smarting sensation, that defendant had had intercourse with her; but was unconscious of it at the time. On the way to the house defendant said: "I am up to this kind of business." He unlocked the door of his dwelling-house, and took witness into the sitting room. and then went to the bedroom and told his wife, who was in bed, that the sleigh had broken down, and that he had brought witness home with him to stay all night. Witness slept with defendant's wife. While undressing she noticed that her clothing was soiled with blood stains. She took breakfast at defendant's house, and remained there until 10 o'clock the next day, when her brother came after her, and she went home. She was delivered of a child on the 9th day of November, 1875. She was sixteen years old in April, 1875. She had frequently visited defendant's, being on friendly terms with his wife. Witness was in the habit of drinking when she did not feel well. She rather liked a whisky sling, and usually took one when she was unwell. It was whisky that defendant gave her, and there was nothing bitter or peculiar in its taste. She thought it was nothing but whisky straight. She did not drink any that evening, except the sup in the sleigh. In walking home with defendant, he did not take her arm or hand, and she did not take his, and they did not go out of the road. She made no complaint to any one of the outrage upon her for sixteen weeks afterwards.

Fred. M. Patterson, brother to the complaining witness, testified, upon the trial, that defendant gave him a drink in the street after church, and that after he and his sister got into the sleigh and started home defendant got into the sleigh. After going about a mile and a half the sleigh broke down, and he told his sister she had better go home with defendant, and he would take the horses home. He started the wrong way, and met a man who told him he was going the wrong road, and he then went home, and took the harness off the

horses. This witness says: *"I do not know whether my sister drank any at all that night; I can't say."* He also stated that he did not remember whether defendant offered him anything to drink in the sleigh. He stated that he went after his sister about noon next day, and that she made no complaint, and he noticed nothing unusual about her. The State offered to exhibit the child to the jury, to which the defendant objected. The objection was overruled, and the infant was shown in evidence to the jury.

The foregoing is the substance of all the evidence, bearing upon the facts, which was offered by the State upon the trial.

Under section 4560 of the Code the defendant can not be convicted upon the testimony of the person injured, unless she be corroborated by other evidence tending to connect the defendant with the commission of the offense.

The testimony of the complaining witness in this case is a most improbable story upon its face.

But conceding it to be true that a woman, in the habit of drinking whisky, should take a small sup of what she supposed to be whisky out of a bottle from which others were drinking, and, while walking a mile, or thereabouts, should suddenly become unconscious, and remain in such a state of obliviousness that a man could have criminal intercourse with her without her knowledge, yet we do not believe there was any corroborating evidence tending to connect the defendant with the commission of the offense.

There is not a fact sworn to by Fred. M. Patterson but what is perfectly consistent with the defendant's innocence. All that can be claimed from his testimony is that he and his sister and the defendant were riding in the sleigh together; that the sleigh broke down; that he took the horses home, and his sister and defendant started to walk to defendant's house; and that about noon next day he took her from there to her home.

The fact that the complaining witness was delivered of a child at the end of about the usual period of gestation from

that night does not connect the defendant with the commission of the offense charged. Aside from her testimony, there is nothing in the evidence, excepting the mere opportunity afforded by the parties being together, and this by accident, and under circumstances having no natural or reasonable tendency in the direction of guilt upon the part of the defendant.

The court instructed the jury as follows: "If you find that the child resembles the defendant as children resemble their fathers, and your judgment and experience teach you that there is anything reliable in this appearance that would be safe for you to form an opinion on, then you may consider these matters (meaning this and other facts recited in the instructions) in corroboration of the prosecutrix, and also as testimony to connect the defendant with the commission of the crime charged."

An instruction in substantially the same language was given in the case of *Stumm v. Hummel*, 39 Iowa, 478, and it is urged by the Attorney General that this court approved the same. The question as to the right to offer the child in evidence does not appear to have been raised in that case. The court (BECK, J.) said: "This instruction is said to be erroneous, because it does not confine the consideration of the jury to family resemblance. Certainly nothing else could have been understood by the jury. The word resemblance here used implies that likeness ordinarily seen between child and father."

In the case at bar the defendant objected to the child being shown to the jury, and excepted to the instructions, and insists that the action of the court was erroneous, not because the instruction was not clear and distinct in language, but because the resemblance of infants to the father is too indistinct and uncertain to be allowed as evidence in a case of this character. In this view we concur. This child was about three months old at the time of the trial. We have found that aside from this there was no corroborating evi-

dence to warrant a verdict of guilty, and it would be a most unwise and dangerous rule to hold that a man may be deprived of his liberty by reason of a supposed resemblance between a child of that age and himself. See *Rink v. The State*, 19 Ind., 152; *Kensington v. Rowe*, 16 Me., 38.

We think the evidence was insufficient to support the verdict. We need not discuss the other questions presented in the argument of counsel.

REVERSED.