MARY SHORTEN v. JOHN JUDD, by his Next Friend, William Runkle, et al.

No. 7737.

1. PARTITION—Action by Heir—Practice. Where relief is sought by an alleged heir only as to real estate of which he claims a portion, and no part has been sold for the payment of debts, and no division has been made, such heir may have specific relief as to the property itself, and need not pursue the circuitous remedy of contribution in the probate court.

2. ALLEGED WIDOW, When a Competent Witness—When not. Assuming that a party claiming to be a widow, and entitled to a one-half interest in the real estate of the alleged husband, is incompetent, by reason of section 322 of the code, to testify in her own behalf as to certain facts which are also necessary to be proven on the part of her son, who is a party claiming a share of the same real estate, her testimony is not rendered competent in behalf of her son by a disclaimer of all interest in her own behalf after the close of the evidence; but, having disclaimed, she will be a competent witness as to such facts on a new trial.

3. DECLARATIONS as to Relationship, etc. The declarations of a person deceased as to relationship, descent, birth or marriage are admissible in evidence where such declarations concern the family affairs of the declarant.

4. PROOF OF PATERNITY—Opinions of Witnesses. Opinions of witnesses as to family resemblance between a child and the putative father are not admissible in proof of paternity.

5. ———— Photograph of Putative Father as Evidence. Evidence of family resemblance by view and comparison of the jury is admissible in proof of the paternity of a child which has attained

an age when its features have assumed some degree of maturity and permanency; and, where the putative father is dead, a photograph, proven to be a good likeness of him, is admissible in evidence for the purpose of comparison with the child in court.

*Error from Bourbon District Court.*

On October 10, 1880, William Judd married Mary Toler. On October 7, 1881, Jennie L. Judd was born, being the only issue of the marriage. The husband and wife separated in March, 1882, she returning to her father's house, with the child, and not long afterward she obtained a decree of divorce from him by reason of his fault, and she was allowed alimony in the sum of $1,200, which was paid. On July 12, 1886, William Judd executed a will, in which he devised and bequeathed all his property, real and personal, to said daughter, Jennie L. Judd. Early on the morning of June 11, 1888, William Judd died by his own hand. His will was probated in Bourbon county on June 20, 1888. At the time of his death he owned 330 acres of land in Bourbon county, and a considerable amount of personal property, which latter, at the time of the trial, was in the possession of the defendant Rufus F. Peake, executor. On May 3, 1890, Jennie L. Judd died in Bourbon county, of course unmarried, intestate, and without issue. In November, 1890, Mary Judd married Frank Shorten, and both were defendants in the court below. The foregoing facts are undisputed.

It was claimed in behalf of John Judd that he was born February 2, or 3, 1889, the legitimate child of William Judd and Sadie Runkle, being the only issue of a common-law marriage which took place about the last of March, 1888. On January 27, 1889, Sadie Runkle, who had never taken the name of Judd, was married to Charles Mott. This action was commenced

in behalf of the child, John Judd, June 19, 1890, for the purpose of setting aside the will, and for the partition of said real estate, one-half to be set off to him, and the other half to his mother, Sadie Runkle, free and clear of the claims of any of the other parties. On June 20, 1890, Sadie Runkle, defendant, filed answer, alleging that the will was void, and asking for partition of the real estate, and that she be given one-half thereof. On the trial the principal issues were as to the paternity of John Judd, and his legitimacy; the latter depending upon the validity of the alleged common-law marriage. Sadie Runkle Mott was called as a witness for the plaintiff, and she was allowed to testify, over the objection of the other defendants, to the transaction or communication with William Judd which was relied upon as constituting a common-law marriage, and also as to her subsequent relations with William Judd up to the time of his death. In the course of her cross-examination she said she claimed an interest for her child, not for herself. After the testimony in the case had closed, her counsel, who were also counsel for the plaintiff, declared in open court that they now disclaimed any interest in the property on behalf of the defendant Sadie Mott. Certain questions of fact were submitted to a jury, but on request of the parties the court made conclusions of fact and of law upon all the issues, and on January 30, 1891, at December term, judgment was rendered for partition of the property, one-half of the same to the plaintiff, John Judd, and the other half to the defendant, Mary Shorten. The latter, claiming the entire property as the sole heir of Jennie L. Judd, prosecutes her petition in error in this court.

*John H. Crain,* and *Walter L. Simons,* for plaintiff in error.

*C. E. Cory,* and *W. R. Biddle,* for defendant in error John Judd; *J. I. Sheppard,* of counsel.

The opinion of the court was delivered by

MARTIN, C. J.: I. Counsel for plaintiff in error contend that the district court had no jurisdiction of the subject of the action, and that relief should have been sought in the probate court by way of contribution, and sections 39, 58, 59, 60, 61 and 62 of chapter 117, General Statutes of 1889, being an act relating to wills, are cited in support of this position. It is ·our opinion, however, that where relief is sought only as to real estate, and no part thereof has been sold for the payment of debts, and no division has been made, an heir may have specific relief as to the property itself, and need not pursue the circuitous remedy of contribution in the probate court.

II. It is virtually conceded in the briefs of defendant in error John Judd that Sadie Runkle Mott was incompetent, under section 322 of the code, to testify as to the transaction or communication with William Judd relied on as proof of the marriage; but it is claimed that the error was cured by the renunciation made on her behalf. At the time of the renunciation, however, all claim had been withdrawn to the effect that the plaintiff below might recover as the illegitimate son of William Judd, and it was necessary to prove the marriage in order to give him any standing whatever in court. His mother had been made a defendant, but she was united in interest with the plaintiff, and might have been joined with him. In her answer she claimed a one-half interest in all the

property, and her testimony in support of the marriage was more in her own behalf than in support of the claim of her son. It would not do to allow her to experiment with the double claim in behalf of herself and her son until the close of the evidence, and then make her incompetent testimony competent for her son by withdrawing her own claim. On account of this error the judgment must be reversed; but, as Mrs. Mott has now disclaimed any interest, she will be a competent witness as to the alleged marriage on the next trial.

III. The plaintiff in error complained of the admission in evidence of certain statements and declarations of William Judd to Doctor Elder and others concerning his relations with Sadie Runkle, and tending to prove a common-law marriage and the paternity of her son. We hold, however, that the evidence was competent under the rule that allows the declarations of a deceased person to be given in evidence where the fact of relationship, descent, birth or marriage is in controversy, and the declarations concern his family affairs. ( *Smith v. Brown,* 8 Kan. 609, 620; 1 Greenl. Ev. § 134; *Betsinger v. Chapman,* 88 N. Y. 487, 496, 499; *Branch v. Manufacturing Co.,* 56 Fed. Rep. 708, 713.)

IV. Certain witnesses acquainted with William Judd in his lifetime, and who saw the little boy in court, were allowed to testify on the point of family resemblance between the two. In our opinion, this was not a proper subject of expert or opinion testimony, and it ought to have been excluded. ( *Keniston v. Rowe,* 16 Me. 38, 40; *Eddy v. Gray,* 4 Allen, 435, 438.)

V. A photograph of William Judd was admitted in evidence for the purpose of comparison of features

with the child in court.   While in most cases evidence
of family resemblance by view and comparison of the
jury is of little value in proof of parentage, yet it has
often been held admissible where the child has at-
tained an age when its features have assumed some
degree of maturity and permanency.   Where the child
is a young infant, it has been held best not to exhibit
it to the jury.   Much must be left to the discretion of
the trial court, however, as to the proper age, and we
would not feel warranted in a reversal of the judg-
ment in this case on account of the child's appearance
before the jury. (*The State v. Danforth*, 48 Iowa, 43,
47 ; *The State v. Smith*, 54 id. 104 ; *Gilmanton v. Ham*,
38 N. H. 108, 112, 113.)   And where the putative fa-
ther is dead, and a photograph, proven to be a good
likeness of him, is offered in evidence for the purpose
of comparison with the child in court, we think it ad-
missible. (2 Rice, Ev. § 435, *et seq.; Udderzook v. Com-
monwealth*, 76 Pa. St. 340, 352, 355 ; *People v. Webster*,
68 Hun, 11, 17.)

The instructions given to the jury to aid in answering
the two questions whether Sadie Mott, formerly Sadie
Runkle, was the wife of William Judd at the time of
his death, and whether John Judd was the son of
William Judd, pretty fully covered the subject; but
as to the alleged contract of marriage being executory
and conditional, and not executed and absolute, see
*Carmichael v. The State*, 12 Ohio St. 553, 559, 560 ;
and *Port v. Port*, 70 Ill. 485, 488, 490.

We have purposely refrained from the expression
of any opinion as to the sufficiency of the evidence to
sustain the findings of the court and the jury that
there was a marriage between William Judd and
Sadie Runkle, for, as the case must go back for a
new trial, the parties will have opportunity for the

introduction of any new evidence which may be disclosed to throw light upon the subject.

The judgment will be reversed, and the case remanded for a new trial.

JOHNSTON, J., concurring.

ALLEN, J., dissenting.