No. 24,960.

IRENE JACKSON STILLIE, a Minor, by JOHN F. JOHNSON, Guardian, *Appellee*, v. FRANK D. STILLIE et al., *Appellants*.

SYLLABUS BY THE COURT.

EJECTMENT—*Demurrer to Evidence Sustained—New Trial Granted—Judicial Discretion.* An order granting a new trial, after a demurrer has been sustained to the evidence of the party having the burden of proof will not be reversed where for anything shown in the record, it may have been induced by a belief of the trial court that the failure to make a case was excusable, was capable of remedy, and that justice would be promoted by allowing another opportunity to introduce evidence.

Appeal from Shawnee district court, division No. 2; GEORGE H. WHITCOMB, judge. Opinion filed February 9, 1924. Affirmed.

*W. R. Hazen*, of Topeka, for the appellants.

*Elisha Scott, W. E. Atchison*, and *James E. Larimer*, all of Topeka, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: The action was one of ejectment. The trial court sustained a demurrer to plaintiff's evidence. The plaintiff filed a motion for new trial, setting up all the statutory grounds. The court allowed the motion without stating upon what ground or

grounds, and ordered a new trial. Defendants appeal from the order granting a new trial.

The plaintiff claims to be an illegitimate daughter of John Stillie. John Stillie was a negro. He was a bachelor and at the time of his death in 1921, was 56 years of age. He left surviving him several brothers and sisters who are residents of North Carolina, none of whom have ever lived in Kansas. He operated a grocery store in a community of Topeka inhabited almost exclusively by negroes. There was evidence showing that in the months of January, February and March, 1905, and for two or three years prior thereto, plaintiff's mother, Lena Hardison, who was a near neighbor of Stillie, frequently visited his store; that in April or May, 1905, Lena Hardison met Carl Jackson and four weeks later married him; that Jackson came to Topeka from Carthage, Missouri; that on November 3, 1905, the plaintiff was born; that Jackson lived with his wife about three weeks after the child was born, then abandoned her and obtained a divorce; that John Stillie stated to his friends and neighbors that the child, Irene, was his daughter; that he assumed the burden of her support by furnishing provisions and money for her clothing; that she was commonly known as and called Irene Stillie among the school children; that in 1912 her mother, Lena, was married to Henry McDowell. A few days after their marriage McDowell told Stillie he would expect him to support the child, which Stillie agreed to do; that Carl Jackson was not in Topeka during the months of January, February and March, 1905; that Carl Jackson was first introduced to Lena Hardison at a social which was held on or about four weeks prior to their marriage, which occurred June 15, 1905. The court sustained the demurrer, principally on the ground that the testimony of non-access of the husband, Carl Jackson, was not clear and conclusive.

Among other things, the court said:

"Here this child was born on the 3rd of November, 1905. The marriage of the Jacksons took place on the 15th day of June. The time that had expired after the marriage was something less than five months, so that in the ordinary course of events the conception of this child couldn't have taken place after the marriage but must have occurred at some time previous—perhaps three months or more previous to that time. The rule seems to be just the same in a case of that kind as to the presumption of legitimacy as in a case where the child is born after a lapse of the regular time. In other words, the same degree of proof is required of non-access in a case of this kind as in the ordinary case. . . . There is evidence of his (Jackson's) marriage certifi-

cate or application that he gave his residence as Carthage, Missouri. . . . It impressed me as this evidence went in that there ought to be some definite showing here as to where he actually was; something more than negative testimony as to the time he came here, and I believe evidence of that kind could have been obtained. . . . So that evidence such as has been introduced as to when he was first seen here may be sufficient to make it a case of preponderance of the evidence; that is, be matter for the jury to decide whether that was sufficient to show when he came here. . . . I think the most that can be said from the evidence is that it is probable that there was non-access and that surely is not what is meant by this rule . . . but I believe that under the view I have taken of the matter that I shall sustain the demurrer to the evidence. I believe there is sufficient evidence to go to the jury on all other questions involved in the case. But as to this one matter I think the testimony that has been offered as to non-access, is of a negative character and not entitled to the same weight as positive testimony."

It is apparent from a reading of the record that it was only with considerable hesitation that the trial court sustained the demurrer to the evidence. There was substantial testimony at the trial showing non-access of the husband, but the trial court took the view that unless it was clear and convincing to him it should not go to the jury. There was substantial competent evidence tending to show non-access, and under the circumstances, the court should have submitted the question to the jury. It was the province of the jury, under proper instructions, to determine the question as to whether or not the evidence was of such clear and convincing character that it came within the rule.

On the hearing of the motion for a new trial, plaintiff offered in evidence the affidavits of Carl Jackson, the former husband, Pearl White, a sister of Carl Jackson, and Ben Bailey.

The affidavit of Jackson, among other things, stated: that as an infant he was taken to Carthage, Missouri, where he has ever since resided; that two sisters, Pearl and Fannie, removed from Carthage to Topeka; that sometime in the early spring or early summer of 1904 he came to Topeka to visit his sisters, it being his first trip; that he remained in Topeka during the summer and early fall of 1904 when he returned to Carthage; that he was in Carthage for Christmas of 1904 and remained there during the entire winter until about the last of April or the first of May, 1905, when he made a second trip to Topeka where he again lived with his married sister Pearl and his unmarried sister Fannie; that in April or May, 1905, he met for the first time Lena Hardison; that the introduction occurred about one month prior to his marriage with her which oc-

curred on June 15, 1905; that he is positive that he was living in the city of Carthage, Missouri, during the entire month of December, 1904, January, February and March, 1905, and nearly all, if not all the month of April, 1905; that the child, Irene, born to his wife Lena Hardison Jackson, in November 1905, was not his child; that he so told his wife at the time; that the general reputation in the neighborhood and amongst the people residing in the neighborhood where John Stillie operated his grocery store, and where Irene Jackson Stillie was born, was that she was the daughter of John Stillie.

Pearl White stated that she was formerly a resident of Topeka; that she is a sister of Carl Jackson; that at the time of the marriage of Carl to Lena Hardison, she (Pearl White) resided in Topeka; that Carl Jackson was in Carthage, Missouri, during the entire winter of 1904 and came to Topeka in the late spring of 1905. In her best judgment it was in April; that Carl Jackson was not in Topeka during January, February or March of that year.

Ben Bailey stated that he formerly and in the year 1905, lived in Carthage, Missouri; that he was well acquainted with and roomed for many months with the relatives of Carl Jackson in Carthage, Missouri; that Carl Jackson was in Carthage, Missouri, the latter part of 1904 and the first part of 1905 and was living in Carthage, Missouri, during all of the months of January, February and March, 1905.

On the motion for new trial with the additional evidence of Carl Jackson, Pearl White and Ben Bailey, the trial court in the exercise of his judicial discretion and in the furtherance of justice, concluded that the plaintiff was entitled to a new trial and that the case should go to the jury.

Under the circumstances, we are unable to say that the court abused its discretion.

In *Bank v. Goodrich*, 96 Kan. 719, 153 Pac. 541, it was said:

"An order granting a new trial, after a directed verdict has been returned against the party having the burden of proof, will not be reversed where for anything shown in the record it may have been induced by a belief of the trial court that the failure to make a *prima facie* case was excusable and capable of remedy." (Syl.)

In the opinion it was said:

"New trials ought to be granted whenever in the opinion of the trial court the party asking for the new trial . . . has not in all probability obtained or received substantial justice, although it might be difficult for the trial court

or the parties to state the grounds for such new trial upon paper so plainly that the supreme court could understand them as well as the trial court and the parties themselves understood them.' (*City of Sedan v. Church,* 29 Kan. 190, 191.) If a defense really exists a reversal of the order granting a new trial would give the plaintiff a judgment to which it was entitled only by reason of some mistake of the defendant; if none exists the plaintiff suffers nothing by an affirmance beyond the delay occasioned by the granting of a new trial and the taking of the appeal." (p. 721.)

In *Hawks v. Railway Co.,* 100 Kan. 529, 165 Pac. 275, it was said:

"Where a new trial is granted after a verdict for the defendant, this court will not ordinarily undertake, upon an appeal from such order, to determine whether the plaintiff failed to make a *prima facie* case, inasmuch as the trial court may have thought a new trial advisable, even if that were true, regarding the failure as excusable and remediable." (Syl.)

In the opinion it was said:

"Even if this court, upon an examination into the matter, should be of the opinion that the plaintiff had failed to make out a *prima facie* case, the granting of the new trial might be permitted to stand on the ground that the trial court may have believed that 'the failure, even if not due to any erroneous ruling against him, was for some reason excusable, and that justice would be promoted by allowing him another opportunity to introduce evidence." (p. 530. See, also, *Ball v. Collins,* 100 Kan. 448, 165 Pac. 273; *Chop v. Swift & Co.,* 113 Kan. 371, 214 Pac. 407, and cases cited.)

No good purpose could be accomplished by a further discussion of the evidence in the instant case, or the principles involved in like cases. We have given careful consideration to the able argument of counsel for defendants, but are convinced that there was no abuse of discretion by the trial court in granting a new trial.

The judgment is affirmed.

HARVEY, J., concurring in the result.