No. 26,253.

IRENE (JACKSON) STILLIE, a Minor, by JOHN F. JOHNSON, Her Guardian, *Appellee*, v. FRANK D. STILLIE et al., *Appellants*.

SYLLABUS BY THE COURT.

1. TRIAL—*Special Interrogatories—Indefinite Answers.* A reversal of a judgment will not be based on an indefinite answer to a special question submitted to a jury although a more definite answer was requested, where the answer to the question could not be conclusive of the fact toward which it was directed and could be used only as evidence in an argument to establish that fact.

2. BASTARDS—*Evidence of Paternity—Nonaccess of Husband.* Under the previous decision of this court on a former appeal in this action, it was not error to submit to the jury the evidence concerning the nonaccess of the husband to the wife, the mother of the plaintiff, at the time the plaintiff was begotten.

3. WITNESSES—*Competency—Nonaccess of Husband—Admissibility of Testimony of Wife.* On a trial to establish the paternity of a child born in wedlock, where evidence is introduced tending to show that the husband did not have

1. Trial, 38 Cyc. p. 1921. 2. Bastards, 7 C. J. § 15. 3. Witnesses, 40 Cyc. p. 2222; 2 L. R. A., n. s., 619; L. R. A. 1916B, 1053; 3 R. C. L. 731, 734.

access to the wife at the time the child was begotten, the mother may be permitted to testify that a certain person other than the husband was the father of the child.

4. SAME—*Evidence of Paternity—Recognition by Putative Father.* There was sufficient evidence to show that the putative father generally and notoriously recognized that an illegitimate child was his child.

5. SAME—*Evidence of Paternity—Physical Characteristics.* When the paternity of a child born in wedlock is an issue, evidence may be admitted to show the physical characteristics of the mother's husband and of another man whom one side to the controversy attempts to prove was the father.

6. SAME—*Evidence of Paternity—General Reputation as to Paternity.* In an action by an illegitimate child against the brothers and sisters, and children of deceased brothers and sisters of the alleged father, for the recovery of the real property left by him, where there is ample evidence to show that he was the father of the child and to show recognition by him, the admission of evidence of general reputation in the community that the child was his child is not so prejudicially erroneous as to cause a reversal of the judgment in favor of the illegitimate child.

7. NEW TRIAL—*Grounds—Newly Discovered Evidence.* A new trial will not be granted on the ground of newly discovered evidence where that evidence is cumulative and is not decisive of the final result, and where there was ample evidence, which the jury disbelieved, to establish the facts sought to be proved by the newly discovered evidence.

Appeal from Shawnee district court, division No. 2; OSCAR RAINES, judge *pro tem.* Opinion filed December 5, 1925. Affirmed.

*W. R. Hazen* and *Frank G. Drenning,* both of Topeka, for the appellants.

*James E. Larimer, Elisha Scott* and *W. E. Atchison,* all of Topeka, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The plaintiff, who alleged that she was the illegitimate and only child of John Stillie, a bachelor, who died leaving brothers and sisters, and children of deceased brothers and sisters surviving, recovered judgment in ejectment. The defendants appeal.

This is the second appeal. The former opinion is found at *Stillie v. Stillie,* 115 Kan. 420, 223 Pac. 281. In that opinion is a summary of the evidence introduced on the trial from which that appeal was taken. Evidence introduced on the trial from which the present appeal is taken tended to prove the facts outlined in the former opinion. Those facts will not be here repeated.

4. Bastards, 7 C. J. § 21; 3 R. C. L. 738.  5. Id., 7 C. J. § 14.  6. Appeal and Error, 4 C. J. § 2955.  7. New Trial, 29 Cyc. p. 915; 20 R. C. L. 290.

The trial was by jury, and special questions were answered by the jury as follows:

"1. Was Carl Jackson in Tennessee Town in the year 1904? A. Yes.

"2. If you answer question No. 1 in the affirmative, then state during what part of 1904 Carl Jackson stayed in the city of Topeka, and with whom he was staying at the time? A. Late summer or early fall at his sister's in Tennessee Town, Topeka, Kansas.

"3. When were Carl Jackson and Lena Hardison married? A. June 15, 1905.

"4. When was Irene Jackson, the plaintiff in this action, born? A. November 3, 1905.

"5. How long did Carl Jackson keep company with Lena Hardison before they were married? A. From two to six weeks.

"6. Where did Carl Jackson stay in Tennessee Town in 1904? A. At his sister's.

"7. Did Carl Jackson know that Lena Hardison was in a delicate condition at the time he married her? A. Evidence not conclusive. We do not know.

"8. Was Carl Jackson forced to marry Lena Hardison because of her delicate condition, and was it, at the time, charged that he, Carl Jackson, was the father of the child? A. No.

"9. How long a time elapsed between the time Lena Hardison first became acquainted with Carl Jackson and the time when Carl Jackson commenced keeping her company? A. Two or three weeks.

"10. How long did Carl Jackson and his wife live together after they were married? A. About five months.

"11. Did John Stillie, in writing, recognize the plaintiff as his child? A. No.

"12. Did John Stillie generally and notoriously recognize the plaintiff as his child? A. Yes.

"13. How long prior to the marriage between Carl Jackson and Lena Hardison had Lena Hardison come to womanhood? A. From one to two years."

There was evidence introduced to show nonaccess by Carl Jackson to Lena Hardison, the mother of the plaintiff, at the time of the conception of the latter. The mother was permitted to testify that John Stillie was the father of the plaintiff. Evidence was introduced which tended to prove that John Stillie recognized the plaintiff as his child soon after her birth, and did so repeatedly until the time of his death. Evidence was introduced to prove that it was commonly reputed in the community in which John Stillie lived that he was the father of the child.

1. When the jury first returned the special questions into court the answer to the seventh question read "evidence not conclusive." On the request of the defendant, the jury was directed to return and make a more definite answer to that question. On the return of the jury the second time the words "We do not know" were added to the

answer. The defendants then requested that the jury be again returned and be required to render a more specific answer. That request was denied, and of that the defendants complain.

The access of the husband, Carl Jackson, to his wife, the mother of the plaintiff, at or about the time of the conception of the plaintiff, was one of the principal issues submitted to the jury. It was to determine that issue that question No. 7 was submitted; but if that question had been answered in the affirmative it would not have established that Carl Jackson was the father of the plaintiff, because he might have known that the mother of the plaintiff was pregnant by another man at the time of the marriage, and with that knowledge might have married her. The question submitted was not conclusive on the issue that was being tried. The question was evidentiary in its nature, one from which it could have been argued that Carl Jackson was not the father of the plaintiff.

In *Winfrey v. Automobile Co.*, 113 Kan. 343, 214 Pac. 781, the court said:

"A refusal to submit special interrogations as to matters of evidence, and not the ultimate facts in the case, and which would not have affected the result of the action, is not error." (Syl. ¶ 5. See, also, *Alexa v. Alexa,* 108 Kan. 38, 193 Pac. 1083; *Investment Co. v. Cunningham,* 108 Kan. 703, 197 Pac. 212; and *Hoard v. White,* 114 Kan. 531, 220 Pac. 296.)

With this it is argued that if question No. 8 had been answered truthfully in the affirmative, that answer, together with a truthful answer to question No. 7, would have established that Carl Jackson was the father of the plaintiff. There was evidence which tended to show that Carl Jackson was compelled to marry Lena Hardison. There was other evidence which tended to prove the contrary. It was for the jury to say which was correct. The judgment cannot be reversed because of the indefinite answer to question No. 7, nor of the answer to question No. 8, nor of the answers to both of those questions.

2. The defendants contend that the evidence of nonaccess of Carl Jackson to Lena Hardison at the time the plaintiff was begotten was not of such a character as to warrant its submission to the jury, or to justify the jury in finding that the fact had been established. There was evidence which tended to show that during all of that time, Carl Jackson was every day and every night in Carthage, Mo. There was other evidence which tended to show that he was then in the community in which Lena Hardison lived

and was keeping company with her. The evidence was conflicting, irreconcilably so. The evidence to show nonaccess, if true, conclusively established that fact. The evidence to show that Carl Jackson was with Lena Hardison during that time, if true, conclusively established the fact that there was access. Under these circumstances, there was nothing for the court to do but admit the evidence and submit it to the jury. (*Stillie v. Stillie,* 115 Kan. 420, 223 Pac. 281.)

3. The mother was permitted to testify that John Stillie was the father of the plaintiff, and testified to a long course of illicit relations between him and herself. The defendants contend that because the plaintiff was born in lawful wedlock, the mother could not be permitted to testify that her child was not the child of her husband. The defendants cite a long list of authorities to support that contention. The problem would be a serious one if it were not for the decisions of this court. In *Hospital Co. v. Hale,* 64 Kan. 367, 67 Pac. 848, this court in effect said that it may be shown that one born in wedlock was an illegitimate child, although it was there declared that it should be done only by the clearest and most conclusive evidence of nonaccess by the husband. That principle was recognized in *Brooks v. Fellows,* 106 Kan. 102; 186 Pac. 985; *Sharp v. Losee,* 109 Kan. 211, 222, 199 Pac. 94; *Nolting v. Holt,* 113 Kan. 495, 215 Pac. 281.

4. Defendants contend that there was not sufficient evidence to show that John Stillie recognized the plaintiff as his child. There was evidence which tended to prove that soon after the birth of the plaintiff he had stated that she was his child; that he repeatedly made other like statements thereafter until his death; and that he supported the plaintiff by furnishing her food, clothing, and a place in which to live without charge to her. That was sufficient to establish recognition. A further detailed statement of the evidence is unnecessary.

5. It is contended that—

"1. The trial court committed reversible error in permitting witnesses to testify to the features and color of skin of Carl Jackson, in order to show that he was wholly unlike the plaintiff in features and color of skin, and therefore, she could not be his child.

"2. The trial court committed reversible error in permitting witnesses to testify to the features of John W. Stillie for the sake of comparing such oral descriptions with the plaintiff as she appeared upon the witness stand.

"3. The court, also, committed reversible error in instructing the jury that they might compare the oral descriptions of John Stillie, who was not in court and of whom there was no photograph offered in evidence, to the personal appearance of plaintiff, in order to determine whether or not the plaintiff was the daughter of John W. Stillie, deceased."

The instruction complained of is that part of instruction No. 10 which reads:

"You should also consider the personal appearance of Irene Jackson Stillie, her resemblance, if any, to John W. Stillie, deceased, as well as any other evidence bearing upon such question which may assist you in the determination thereof, and then you will say whether or not the plaintiff is the daughter of John W. Stillie, deceased."

It should be noticed that the evidence complained of was that which concerned the features and color of skin of Carl Jackson and John Stillie.

*Shorten v. Judd,* 56 Kan. 43, 42 Pac. 337, is cited by the appellants to support their contention. The court there said:

"Opinions of witnesses as to family resemblance between a child and the putative father are not admissible in proof of paternity." (Syl. ¶ 4.)

It is not evidence of family resemblance that is complained of; it is evidence describing the physical characteristics of Carl Jackson and John Stillie. In *Shorten v. Judd,* supra, the court also said:

"Evidence of family resemblance by view and comparison of the jury is admissible in proof of the paternity of a child which has attained an age when its features have assumed some degree of maturity and permanency; and, where the putative father is dead, a photograph, proven to be a good likeness of him, is admissible in evidence for the purpose of comparison with the child in court."

If a photograph may be used in evidence to prove paternity, the evidence of witnesses describing physical characteristics should likewise be admissible. 1 Wigmore on Evidence (2d ed., last part of section 166) uses the following language:

"Some courts in the United States now exclude this kind of evidence, partly through misunderstanding the precedents in its favor, partly for the reasons above quoted. Moreover, by a curious contrariety of views, in some instances, the evidentiary fact of resemblance is excluded only when offered through testimony of those who have seen the child; in other instances, only when offered by the presentation of the child in court. The partial exclusion of the former mode of evidence is based chiefly on the opinion rule—the fallacy of which, in this application, needs no further exposition; and partly also on the ease with which a resemblance can be affirmed in general terms, but the simple correction for this danger is to require detailed statements of specific

traits, for the force of the inference rests on these and not on a general resemblance. The partial exclusion of the other mode of evidence—presentation of the child in court—rests on no good reason whatever, and is further considered under the principle involved (post, § 1160). The sound rule is to admit the fact of similarity of specific traits, however, presented, provided the child is in the opinion of the trial court old enough to possess settled features or other corporal indications.

"It is to be noted that the evidence is relevant not merely in bastardy proceedings, but also in trying the legitimacy of a child born during marriage, whenever the presumption of legitimacy allows the issue to be raised (post, § 2527), as well as occasionally in other proceedings."

The evidence was admissible.

6. The defendants complain of the introduction of evidence to show that in the community in which John Stillie lived, he was generally reputed to be the father of the plaintiff. The evidence showed that this reputation started soon after the birth of the plaintiff and continued until the time of the death of John Stillie. There was ample evidence to show that John Stillie was the father of the plaintiff and that he recognized her as his child. It may be stated that neither paternity nor recognition can be proved by general reputation, but where there is ample evidence to show both paternity and recognition, the admission of evidence of general reputation can hardly be said to be prejudicially erroneous. Facts to establish paternity may have been generally known in the community, and recognition may have been so notorious that everybody in the community knew of it. Under such circumstances, reputation of both paternity and recognition would be inevitable, and evidence of that reputation would serve to corroborate the evidence to show both paternity and recognition. At most, the admission of that evidence, under the circumstances surrounding this case, cannot be said to have prejudicially affected the rights of the defendant.

In *McLean v. McLean*, 92 Kan. 326, 331, 140 Pac. 847, the court said:

"It is especially urged that the court erred in permitting several witnesses to testify that there was a general rumor and understanding in the Kentucky neighborhood among the neighbors and friends of the decedent that he was the father of the child; also in permitting the witnesses for the defense to be asked, over appellants' objection, if such rumor and understanding did not exist in the neighborhood. It is urged that this is hearsay, but the fact, if if is a fact, that a rumor of this character prevailed in the neighborhood at about the time the birth occurred is some evidence that the decedent knew thereof. As said in the Iowa cases cited, the existence of such a rumor is a

Stillie v. Stillie.

matter for consideration by the jury, and especially if it is a general rumor and understanding, it is natural that the person, if falsely implicated therein, would take some pains to deny it or disprove it." (See, also, *Smith v. Smith,* 105 Kan. 294, 296, 182 Pac. 538; *Nolting v. Holt,* 113 Kan. 495, 496, 215 Pac. 281.)

7. The defendants argue that a new trial should have been granted on the ground of newly discovered evidence on the question of non-access. There was an abundance of evidence to show access, if the jury had believed it. The newly discovered evidence was merely cumulative. New trials are not granted for that character of newly discovered evidence where it is not likely to change the final result. This principle is declared in *The State v. McCool,* 34 Kan. 613, 9 Pac. 618, where this court said:

"Newly discovered evidence which is merely cumulative, and which is not of a material and decisive character, is not sufficient cause to warrant the court in granting a new trial."

This action was tried, then appealed to this court, and tried again in the district court. If the diligence exercised after the last trial had been displayed before that trial, the chances are that the evidence advanced as newly discovered would have been found before the trial and introduced thereon.

Other matters are argued, but they are not deemed of sufficient importance to warrant further discussion; they chiefly concern the sufficiency of the evidence to prove or disprove certain facts. There was evidence to support all the facts found by the jury.

The judgment is affirmed.