No. 28,476 and No. 28,762.

IRENE JACKSON STILLIE MARTIN, *Appellee*, v. JAMES E. STILLIE et al., *Appellants*.

(286 Pac. 394.)

Opinion on rehearing filed April 5, 1930.

*W. R. Hazen, Bennett R. Wheeler, S. M. Brewster, John L. Hunt, Virgil V. Scholes* and *Margaret McGurnaghan,* all of Topeka, for the appellants.

*Frank E. Miller, James E. Larimer, Elisha Scott* and *W. E. Atchison,* all of Topeka, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: The last opinion in this action is found in *Stillie v. Stillie,* 129 Kan. 19, 281 Pac. 925. Other opinions are found in 115 Kan. 420, 223 Pac. 281; 119 Kan. 816, 244 Pac. 844; 120 Kan. 565, 244 Pac. 844; 121 Kan. 591, 249 Pac. 672.

After the last opinion had been filed a rehearing was granted. The cause has been ably argued on the rehearing. After hearing that argument and after considering all matters that have been presented, the court concludes to adhere to the last opinion filed and affirm the judgment of the trial court. It is so ordered.

JOCHEMS, J. (dissenting): I am not entirely unsympathetic with the attitude of the majority of the court in this case. Nor am I unappreciative of the annoyance caused by its frequent appearance in this court. It seems that no matter what we do—like Banquo's ghost—this Stillie case continues to haunt us and will not down. Again, it is like the scarlet spot on Lady Macbeth's hand. To paraphrase the words of that conscience-bedeviled woman, we may re-

peat again and again: "Out, damned Stillie case. Out!" and yet it will not "out."

I do not believe in the "nuisance" method of terminating litigation. It is not sound. So long as a litigant has a cause of action not completely and finally adjudicated by a court of justice he is entitled to proceed on the merits to a final judgment. The final judgment must result from a trial conducted in conformity with the law of the case. He has a right to insist upon an adherence to the rules—the law of evidence governing the conduct of trials. Our system of jurisprudence contemplates that every litigant is entitled to have his "day in court." In this case, apparently, the litigants have had many days in court, but the case has never reached that final day where judgment has been entered according to the law and the evidence.

The present opinion is the sixth one by this court in this case. Three of the opinions were on rehearings granted by this court. In the last decision (129 Kan. 19), the rehearing of which is now before us, the court reversed its former ruling, and the Lord Mansfield rule now stands as the law of this state:

"The declarations of a father or mother cannot be admitted to bastardize the issue born after marriage."

That much is certain. Right or wrong, there is no longer any doubt about the law on that question. It is better that the law be certain than that it be right. In other words, it is better for the trial courts, litigants, lawyers, business men, and in fact all citizens of the state to know what the law is, than to leave them groping, guessing and uncertain as to the definite rule, because of our desire to be meticulously right in every instance. So, to the extent that this case has enabled us to make the law certain on this point, our work on it has not been fruitless or vain.

In rendering its last decision (129 Kan. 19) the court determined that the Lord Mansfield rule should be followed. The trial from which the appeal was taken was conducted in accordance with the rule laid down by this court in its prior decisions on this case. So, in the last trial, the trial court very properly followed the then existing law as to the admissibility of the mother's testimony. By its last decision the court overruled its former decisions on the question of the admissibility of the mother's testimony, and logically this should have been followed by the granting of a new trial; but the court decided to affirm the last judgment of the district court,

notwithstanding the erroneous admission of testimony (determined to be erroneous in the last decision in 129 Kan. 19). The court put its affirmance upon the ground that "the trials of this action have been saturated with perjury from the beginning, and the cause has come to be a public nuisance which should be terminated."

It seems rather severe to reverse a trial court on a point in which he followed the directions of the supreme court in a recent decision. There is, however, no difference in principle in overruling our former decision in this case, and reversing the trial court, than there is in reversing any trial court where it has followed a prior decision which this court later decides to overrule. If we make a mistake and later discover it, of course it becomes our duty to correct the mistake. At the same time we should make such order as will not only correct the mistake, but do justice in accord with our last decision between the parties who have been affected by the mistake. Where the same litigation in which the error originally arose is still before us, there is all the more reason for ordering a reversal.

In this connection the language used by Mr. Justice Smith in the case of *Railway v. Merrill,* 65 Kan. 436, 70 Pac. 358, seems to apply forcibly. In answering the contention that a decision of the supreme court once announced should be followed, he said:

"This would come to us with more force if we were not now considering the same case with the same parties before the court. If an erroneous decision has been made, it ought to be corrected speedily, especially when it can be done before the litigation in which the error has been committed has terminated finally. We are fully satisfied that the rule of the former case is shattered by the pressing weight of opposite authority, and that reason is against it." (p. 451.) (See, also, *Hudson v. Riley,* 114 Kan. 332, 219 Pac. 499.)

The appellants in their brief on rehearing forcibly criticize the instruction given by the trial court reading as follows:

"Some evidence has been introduced in this case tending to prove that the general report and reputation in the neighborhood where John W. Stillie lived and among the people with whom he mingled was that he was the father of the plaintiff. I instruct you that such evidence is proper for you to consider only in determining the question of whether or not John W. Stillie generally and notoriously recognized the plaintiff as his child."

The general and notorious recognition by John W. Stillie that the plaintiff was his child could not be established by "the general report and reputation in the neighborhood where John W. Stillie lived and among the people with whom he mingled that he was the father of plaintiff." Such general report and reputation was no

evidence that John W. Stillie ever recognized the plaintiff. In fact a general reputation that he was the father could exist from gossip in the neighborhood and yet he may never have recognized the child. He might in fact have denied his paternity. The instruction was erroneous.

Consistency, orderly decorum and justice demand that this case be reversed and remanded for a new trial.

HARVEY, J. (dissenting): I agree with Justice Jochems on 'the legal question discussed in his dissenting opinion and simply wish to add: In my judgment the court did the proper thing in its last opinion in this case (129 Kan. 19, 22, 281 Pac. 925, 927), in its determination to adhere to the rule stated by Lord Mansfield. The annotations following Lynch v. Rosenberger, 121 Kan. 601, 249 Pac. 682, reported in 60 A. L. R. 376, demonstrate the wisdom of following that rule notwithstanding its criticism by Dean Wigmore set forth in the opinion in the Lynch case.

On the question of whether this court, on a second appeal of a case, should follow a rule of law then deemed erroneous, which was stated on the first appeal, this court has heretofore taken various positions. Some of the cases are collected in Robertson v. Labette County Comm'rs, 124 Kan. 705, 261 Pac. 831, at pages 706 and 707. A number of cases from other states are collected in the annotations 1 A. L. R. 1267; 8 A. L. R. 1033. Many of the earlier decisions were to the effect that a rule of law stated by the court on the first appeal of a case became the law of the case not only for the trial court in the retrial of the case, but for the supreme court, should the case be appealed a second time. But many exceptions began to work into that rule, and the growing tendency of the courts is to the view that the supreme court is no more bound by an erroneous decision in the same case, on a formal appeal, than it is bound by an erroneous decision in any prior case. That has been declared by statute in some states, and it seems to me to be the correct rule. No reason suggests itself to me why a court of last resort in a state should not correct its errors as rapidly as it finds them, just as an individual should do.

When this rehearing was granted I was in hopes, if nothing else were done, that the court would recede from its determination to dispose of this case on the theory that it has become a public nuisance. To my mind that position is not only unfair to litigants, but is non-

judicial. If on that theory we disposed of all cases which give us trouble there would not be much left for the court to do. As applied to a case so disposed of, litigants would be just about as well off if the court did not exist. In a note on this case in the March, 1930, Harvard Law Review, page 824, it is said:

"Litigants' rights should not depend upon the chance of being the beneficiary of a trial court's error, nor be measured by an appellate court's irritability."

I deeply regret that such can be said concerning this court, with any degree of justice, in any reputable legal publication.