No. 29,496.

John Bungard, *Appellant,* v. Jennie White, Grace Harris, Abbie Hartley, Lydia Deaver and Minnie Wickham, *Appellees.*

(295 Pac. 684.)

Opinion filed February 7, 1931.

*Charles Rooney,* of Topeka, and *Howard Rooney,* of Dodge City, for the appellant; *Harry K. Allen,* of Topeka, of counsel.

*Charles H. Herold* and *John D. Cunningham,* both of Seneca, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action to enforce an oral contract alleged to have been made between the plaintiff and his mother, now deceased, concerning real property, and to have the defendants, his sisters, claiming under a deed from the mother, adjudged trustees of the property involved in trust for the plaintiff. The court found against the plaintiff, that his mother did not enter into a contract with him by the terms of which he was upon her death to become the owner of the property, and that he is not entitled to have a trust in the property declared in his favor. The plaintiff appeals.

The allegations of the plaintiff in his petition are that he was in April, 1924, about to purchase a home for himself and family in the city of Sabetha, Kan., where he resided, when his mother urged him not to do so but to come and live with her in her home in the same city where she was living alone and was unable to properly care for herself, being then 76 years of age, and promising if he and family would come and live with her and care for her, for the remainder of her life, he would receive in compensation for his services the property at her death; that he accepted her proposition, moved into the house with his mother, repaired it at his own expense, and he and his family cared for his mother from May 1, 1924, until her death May 24, 1929. The petition further alleges that shortly before her death the mother, in her weak condition of body and mind, was persuaded by one of her daughters to execute a deed to the property to the five daughters and the plaintiff, without the knowledge or consent of the plaintiff.

Three of the five defendant sisters answered, denying generally and specifically all the allegations of the petition except the relationship of the parties, and they further stated that the inducement of the mother to have the plaintiff move into her home was entirely to save the plaintiff from paying rent; that the mother was in good health and until her last illness needed no care or attention, and did not receive any from the plaintiff or his family except certain errands for which the mother then and there reimbursed them.

The wife of the plaintiff testified, on behalf of the plaintiff, to having heard the oral arrangements made between the plaintiff and his mother before they moved into the house, and related in detail the conversations as she recalled them. Three neighbors testified as to what the mother told them about the son moving into the home

and caring for her, and that he was to have the property when she died. There was evidence of the mother having made a will which was destroyed at or near the time the deed in question was executed.

Two of the sisters, Lydia Deaver and Minnie Wickham, although made parties defendant, did not answer or make any defense, but were called by the plaintiff to testify in his behalf. One of them, Minnie Wickham, was asked if she ever had any conversation with her mother in regard to the disposition of her home property. After answering in the affirmative, she was asked to state what it was. The following objection was made by defendants and sustained by the trial court:

"I object to that as I said before. This witness is one of the defendants in this case and she will be incompetent to testify in her own behalf as to any conversation she had with the deceased. There has not been any disclaimer filed and she is not competent to testify for the plaintiff."

Thereafter the plaintiff made the following offer:

"We offer to prove by this witness that Mrs. Elizabeth Bungard (the mother), during her lifetime, since May, 1924, has stated to this witness that she had desired that John (the plaintiff) come with his family and live with her as long as she lived and, upon her death, that he should get the home place for such services."

The offered evidence was rejected by the sustaining of the following objection thereto:

"We object to that on the ground that this witness is one of the defendants in this case; that she would be incompetent to testify as to conversations she had with the deceased; that there has been no disclaimer of interest by her and therefore she is incompetent to testify for the plaintiff."

The exclusion of this testimony of one of the daughters constitutes the principal assignment of error in this appeal.

It is urged in support of the ruling that this witness was incompetent to testify as to such communications with her deceased mother because she is an interested party in the action and the issues involved, being a defendant, and under the deed having a one-sixth interest or share in the property in controversy; that the only way for her to become competent would be to disclaim such interest, relying upon the decision in the case of *Shorten v. Judd*, 56 Kan. 43, 42 Pac. 337. There, an illegitimate son brought an action to set aside the will of his reputed father, claiming one-half of the estate as the only child, and among the several defendants he named his mother, who filed an answer claiming to be the

common-law wife of the deceased and entitled to one-half of the estate. The principal issues were the paternity of the plaintiff and the validity of the common-law marriage. This defendant, the mother of the plaintiff, testified in his behalf, and later at the close of the trial disclaimed any interest in the estate for herself. The court said:

". . . her testimony in support of the marriage was more in her own behalf than in support of the claim of her son. It would not do to allow her to experiment with the double claim in behalf of herself and her son until the close of the evidence, and then make her incompetent testimony competent for her son by withdrawing her own claim. On account of this error the judgment must be reversed; but, as Mrs. Mott has now disclaimed any interest, she will be a competent witness as to the alleged marriage on the next trial." (p. 47.)

Appellees argue the possibility of the witness in the case having a secret claim with plaintiff whereby she might, as the mother in the case just cited, have what the court called a double claim, whereby if plaintiff should be successful the secret arrangement would inure to her benefit and, on the other hand, if she should lose she would still hold her one-sixth interest under the deed. A situation of this kind might, of course, be possible, but the competency of the witness must be determined from facts established on the trial.

In the Judd case, *supra,* the claims of the son and his mother were the same, each claiming one-half of the estate. Her testimony as to communications had by her with his deceased father was as much in her own behalf as in his. In our case the testimony of the sister which was offered was directly against her own interest. It was not in her own behalf. There was nothing to indicate a double claim. She is not claiming anything. Her very willingness to testify against her own interest is in effect a disclaimer. The very language of the statute fixing the incompetency of a witness with reference to transactions and communications with deceased persons bases it upon the testimony being in his own behalf:

"No person shall be allowed to testify in his own behalf in respect to any transaction or communication had personally by such party with a deceased person, where either party to the action claims to have acquired title, directly or indirectly from such deceased person . . ." (R. S. 60-2804.)

Until 1911 the second word in the above statute was "party" instead of "person," and under that statute it was held in *Niccolls v.*

*Esterly*, 16 Kan. 32, that where the defendant called plaintiff as a witness as to such a transaction, the plaintiff was permitted on cross-examination to testify as to the entire transaction, which otherwise would have been excluded.

In the case of *Koger v. Armstrong*, 72 Kan. 691, 83 Pac. 1029, the administrator of the deceased payee on a note brought an action against the maker thereof and surety thereon. The surety on the trial introduced the deposition of his codefendant, the maker of the note, stating that in the lifetime of the payee he and the payee made an arrangement to extend the time of payment of the note for a valuable consideration without the knowledge or consent of the surety, and it was there held:

"The evidence he gave had no tendency to establish a defense on his own part. Indeed, he explicitly admitted his liability on the note. Neither the spirit nor the letter of the statute rendered him an incompetent witness." (p. 692.)

In the case of *Munger v. Myers*, 96 Kan. 740, 153 Pac. 493, it was said:

"The code restriction, it will be observed, is not directed against the transactions or communications but is a disqualification of certain witnesses to testify to certain things in certain cases." (p. 746.)

"To fall within the operation of that statute in its present form it may be that the witness whose competency is questioned need not be a party to the action, but the testimony he gives must be 'in his own behalf.'" (*Hall v. Wilson*, 121 Kan. 606, 609, 249 Pac. 668.)

See, also, *Hess v. Hartwig*, 89 Kan. 599, 132 Pac. 148; *Collins v. Hayden*, 104 Kan. 351, 179 Pac. 308.

The test of incompetency in this case is whether or not the testimony offered was in her own behalf, in her own interest, or to her own benefit. If it is not such she is competent. The offered testimony of the witness Wickham was not in any way in her own interest or her own behalf, and it should not have been excluded. Appellees insist that if it was competent and entitled to admission it could at most be only cumulative, citing *Rightmire v. Rightmire*, 118 Kan. 707, 236 Pac. 839, and other cases to that effect, but the sole question here involved, and the only one on which the decision was based, was as to whether or not the alleged oral contract was made between the plaintiff and his mother. The wife of the plaintiff was the principal witness heard on this question, and naturally an interest in her husband's business could be properly ascribed to her

in weighing her testimony. Here is one, a daughter of the deceased, whose testimony as offered was against her own interests, and for that reason might be stronger for the plaintiff than that of any or all the other witnesses called to testify on that question. It is not merely cumulative, and should not have been excluded.

On account of the exclusion of this evidence the motion for a new trial should have been granted.

An affidavit was made and filed by one of the attorneys for appellant on the day of the hearing of the motion for new trial in which it is stated that the trial judge talked with the attorney about this case just before the trial began, stating to him in substance that he did not look with favor on this kind of lawsuits because they gave rise to the plundering of estates and to a great deal of perjured testimony. Counsel for appellee state they never saw or heard of the affidavit until they saw it printed in the abstract of appellant, that it was not presented to the court on the hearing of the motion for new trial, and they have been given no opportunity to refute it. Unless it was brought to the attention of the trial court at some time it is not properly here for consideration. Of course, if the attitude and feeling of disfavor of the trial judge toward a certain class of cases is such as to suggest either to himself or the attorneys interested a disqualification, the statute provides a remedy by way of change of venue. But nothing is before us at this time on this particular subject calling for a ruling.

The judgment is reversed and the cause is remanded with instructions to sustain the motion for a new trial.