No. 30,952.

THE J. I. CASE COMPANY, *Appellant*, v. W. J. BODECKER, *Appellee*.

(19 P. 2d 450.)

Opinion filed March 11, 1933.

*Albert Watkins, Arthur C. Scates,* both of Dodge City; *Oscar D. McCollum, Milton Schwind* and *Walter R. Barnes,* all of Kansas City, Mo., for the appellant.

*W. C. Gould, George R. Gould* and *Carl Van Riper,* all of Dodge City, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action on a promissory note for $600. Defendant in his answer admitted executing the note and that it had not been paid, and by cross petition sought to recover damages in the sum of $794 for an alleged breach of contract. The trial court sustained a demurrer to his evidence. His motion for a new trial was sustained. Plaintiff has appealed from that ruling.

Briefly, the cross petition alleged that in December, 1930, the parties hereto entered into two written contracts, by one of which defendant became the exclusive dealer for plaintiff for its tractors, threshers, combines, skid engines, fuel and water tenders and their extras and attachments, in Dodge City, Kan., territory for a term ending October 31, 1931; that by the other contract defendant became the exclusive dealer for plaintiff for its implements, hay presses, silo fillers, repairs, equipment and merchandise described in the contract, for that territory and for the same term; that he was to receive stated commission on sales made; that in pursuance of the terms of the contracts he immediately entered upon the work of advertising and selling the merchandise described therein in the territory mentioned, and that he performed all the conditions and did all the work required of him by the terms of the contracts; that

about June 3, 1931, plaintiff, without any lawful reason therefor, cancelled the contracts and instructed defendant that it would no longer recognize him as its dealer, or furnish him with merchandise for which he might find sale; that in the preliminary work of carrying out the contracts it was necessary and he did expend, for purposes which were itemized, sums aggregating $794, which he alleged plaintiff owed him by reason of the wrongful termination of the contracts.

Answering this cross petition, plaintiff admitted the execution of the contracts, but denied the other allegations of the cross petition; set out the duties of defendant under the contracts; alleged that he had failed and refused to carry out and perform the provisions and agreements set forth in the contracts, and neglected the business of plaintiff; that his services were unsatisfactory and of no value, and that plaintiff was obliged and did procure and establish other representation in said territory of its products about June 1, 1931.

The evidence disclosed that by the terms of the contracts defendant agreed—

"To diligently canvass, sell and service, to thoroughly advertise Case implements in local newspapers, and in all reasonable and proper ways promote the trade and interest of the company . . . to thoroughly distribute in the vicinity such catalogues, circulars, folders and other advertising matter as the company may furnish; . . . to carry on a continuous sales campaign on Case machines and attachments by (a) personally canvassing five days per week, (b) having one salesman canvass five days per week and report to the Case company's branch at the end of each week the names of the persons canvassed, and the machines sold or in which each prospect is interested. To make two demonstrations of Case tractors and tractor-drawn implements. To set up and start all machinery sold under sales contracts. . . . To render any service required by users on all Case products, and for this purpose provide one competent serviceman, all necessary tools for use in both field and workshop, and an adequate space as workshop in the dealer's place of business."

It further provided that should defendant—

"Fail to comply with any of the terms hereof, . . . then the company shall be entitled at its option, . . . to terminate this agreement."

Defendant's evidence disclosed that he had resided at Dodge City six years; that soon after the contracts were executed he went to work canvassing from house to house and called on farmers in practically every house south of the river within five or six miles, talked to about three hundred people, some of them more than once; that

north of the river he canvassed, a part of the territory himself, and after April first employed another man, who canvassed in the territory, mostly north of the river, for about seven weeks, whose salary and expenses amounted to $225, which defendant paid; that he met a number of persons in town and showed them the machinery; that he had no other occupation, but devoted his entire time to plaintiff's business; that he spent about $120 for advertising; that he distributed catalogues and circulars sent him by the plaintiff; that he took part in the Dodge City tractor show at an expense of about $90; that he drove his own car about six thousand miles in canvassing the territory; that he did not make weekly reports each week of the canvassing done, but did send lists several times for several weeks; that he arranged for the services of a competent service man, who had tools and equipment for that purpose, and used him as needed; that beginning April first he rented from plaintiff a room from which to conduct his business and paid rent at $50 per month; that about February 2, 1931, he had a talk at Dodge City with plaintiff's Kansas City manager, its assistant manager and one of its factory men. At that time they talked to defendant about another kind of contract in which he was not interested. They then advised that they would go ahead with the contract for the remainder of its term, at which time the change would be made either with the defendant or someone else. There was evidence that the farmers usually buy machinery a month or two before harvest, and usually buy repairs in April or May, but bought later than usual that year because of the shortage of money. Defendant received commission on repairs sold in April about $60 and on repairs sold in May $280. Plaintiff had not at any time complained to defendant that he was not canvassing the territory or not making reports, or that in any other respect he was not complying with the provisions of the contracts. On June 1, 1931, plaintiff wrote defendant:

"We wish to advise for your information that we are to-day canceling and terminating your contract with this company, effective June 3d, and wish you to be governed accordingly. This, for the reason that we do not feel you are fulfilling the terms of same."

In sustaining plaintiff's demurrer to defendant's evidence the court expressed the view that plaintiff was justified, as a matter of law, in canceling the contracts because of defendant's failure fully to

comply with its provisions, particularly in not canvassing the territory earlier and more thoroughly and in not making reports to plaintiff each week of the names of persons canvassed and the machines in which each prospect was interested. The court granted the new trial upon the ground that the question whether plaintiff, by its course of dealing with defendant, was estopped from canceling the contracts because defendant had not strictly complied with their provisions, was a question for the jury.

Appellant first complains that the court admitted evidence of the conversation between defendant and the manager and other representatives of the plaintiff in February, 1931. Appellant filed no motion for a new trial in this case and is not in a position to raise this question. More than that, we see nothing wrong with the testimony. It had to do with the relations of the parties under the contracts here in question and was competent for that reason if for no other.

Appellant's principal contention is that the court erred in granting a new trial for the reasons stated by the court. It argues that the testimony of the conversations between defendant and plaintiff's manager and others, above referred to, was the only thing tending to show estoppel on the part of plaintiff to insist upon the strict compliance with its contracts. That is taking too narrow a view of the evidence. While the contracts stated several reasons which would justify plaintiff, at its option, to terminate the contracts, the one mainly relied upon here is the failure of defendant to make weekly reports of the persons canvassed, with their names, and a statement of the machinery in which they were interested. There is also a general complaint that defendant was not as active as he should have been in canvassing the territory, in advertising plaintiff's machinery, and in conducting demonstrations. While defendant's activities in these respects were not all they could have been, they are not so wanting as to justify the court in saying, as a matter of law, that plaintiff could terminate the contracts by reason thereof. There was, however, a substantial failure with respect to making the weekly reports. Plaintiff could not help knowing these reports were not made weekly, yet it made no complaint to defendant of his dereliction in that regard, but permitted him to go ahead spending all his own time and, in addition thereto, several hundred dollars in cash advertising and demonstrating plaintiff's

machinery. It rented him a room in which to conduct business, for which it charged and collected $50 a month after April first, and paid him commissions on business transacted, and then, at the beginning of what was really the selling season for the year, terminated his contracts. From the very nature of things plaintiff was putting in his time and expending money for five months with the hope that his commissions during the selling season would reimburse him for his expenditures and compensate him for his services. To justify a termination of the contracts at that time there should be something more than the failure to make the weekly reports—a thing which plaintiff had known about for months and concerning which it had never previously complained. We think the court was correct in saying there was evidence from which a jury might find, from its course of dealing with defendant, plaintiff had become estopped from insisting on the literal interpretation of its contracts with respect to weekly reports, or had waived its right to cancel the contracts by reason thereof. (*Capper v. Paper Co.*, 86 Kan. 355, 121 Pac. 519; *Harpham Brothers Co. v. Perry*, 118 Kan. 457, 235 Pac. 1039; *Hurlbut v. Butte-Kan. Co.*, 120 Kan. 205, 343 Pac. 234.)

Ordinarily we do not reverse trial courts for granting new trials. Unless the reason for granting a new trial is clearly one of law, which does not involve the discretion of the trial court or the weighing of evidence, and the trial court's ruling on the question of law is erroneous, the order granting the new trial should not be disturbed. (*Hawks v. Railway Co.*, 100 Kan. 529, 165 Pac. 275; *Stillie v. Stillie*, 115 Kan. 420, 223 Pac. 281; *Armourdale State Bank v. Hoel*, 120 Kan. 130, 242 Pac. 481.)

The judgment of the court below is affirmed.